**Jose Roberto VILLAFUERTE, Petitioner–Appellant,**

v.

**Samuel A. LEWIS, Director of the Arizona Department of Corrections; Grant Woods, Attorney General of the State of Arizona, Defendants–Appellees.**

No. 93–99015.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 12, 1994.

Submission Withdrawn Nov. 15, 1994.

Resubmitted Jan. 23, 1996.

Decided Jan. 30, 1996.

Daniel D. Maynard, Johnston, Maynard, Grant & Parker, Phoenix, Arizona, for the petitioner-appellant.

Jack Roberts, Assistant Attorney General, Phoenix, Arizona, for the respondents-appellees.

Before: FLETCHER, THOMPSON, and T.G. NELSON, Circuit Judges.

PER CURIAM:

Jose Roberto Villafuerte appeals the district court's denial of his first federal petition for a writ of habeas corpus. An Arizona state court sentenced Villafuerte to death after convicting him of felony murder based

on kidnapping. Villafuerte argues that the state trial court erred in several respects at both the guilt and sentencing phases of his trial. He also claims bad faith failure by the state to conduct a thorough investigation and an unlawful arrest that violated his rights to due process. We reverse on one claim, holding that the court erred by failing to instruct the jury on unlawful imprisonment as a lesser included offense to kidnapping. We remand for issuance of the writ unless Villafuerte is retried within a reasonable period of time.

## I. BACKGROUND

During the afternoon and evening of February 21, 1983, Villafuerte physically assaulted Amelia Schoville, his girlfriend, in the trailer he was renting. Villafuerte then tied Schoville to a bed in the trailer, gagged her, and drove away in her car. Villafuerte claims that he tied her to keep her from calling the police, that he was intoxicated at the time, and that he left instructions with two friends who were allegedly present in the trailer to release Schoville after he left.

A day later, on the afternoon of February 22, a deputy sheriff found Villafuerte sleeping in a dry creek bed near Schoville's car. Villafuerte smelled of alcohol and seemed to be intoxicated and in a stupor. The deputy took Villafuerte into custody.

On February 23, while being questioned by the police, who at that time knew nothing about Schoville, Villafuerte expressed concern about Schoville, explaining that he had left her tied up in the trailer. When the police investigated, they found Schoville bound, gagged, and dead. Schoville had died of asphyxiation, apparently caused by a gag wrapped around her head and stuffed in her mouth.

A grand jury indicted Villafuerte for theft, A.R.S. § 13–1802, kidnapping, A.R.S. § 13–1304, and first degree murder, A.R.S. § 13–1105(A)(2).[1] At trial Villafuerte testified that he was intoxicated throughout the events of February 21. In closing argument, his defense counsel argued that the state could not prove the kidnapping charge because it had

presented no evidence that Villafuerte intended to kill, injure, rape, rob, or frighten Schoville.

The trial judge instructed the jury that to find Villafuerte guilty of first degree murder, it had to find that he kidnapped Schoville and in the course of the kidnapping caused her death. He instructed:

The crime of first degree murder requires proof of the following two things: First, the defendant committed or attempted to commit the crime of kidnapping; and, second, in the course of and in furtherance of the crime or immediate flight from the crime, the defendant caused the death of Amelia Schoville.

The judge gave the following kidnapping instructions:

A person commits kidnapping by knowingly restraining another person with the intent to, one, inflict death ..., physical injury ..., a sexual offense on the victim, or to otherwise aid in the commission of a felony; or, two, to place the victim in reasonable apprehension of imminent physical injury to the victim.

The judge also instructed the jury to decide whether the kidnapping had been dangerous or nondangerous: "[k]idnapping is a dangerous offense if it involved the use of a dangerous instrument or the intentional or knowing infliction of serious physical injury upon another. Otherwise, it is a nondangerous offense."

The jury convicted Villafuerte of theft, kidnapping enhanced to dangerous, and felony murder. He was sentenced to death pursuant to A.R.S. § 13–703. The Arizona Supreme Court affirmed the convictions and sentence, *State v. Villafuerte*, 142 Ariz. 323, 690 P.2d 42 (1984), and the Supreme Court of the United States denied certiorari. *Villafuerte v. Arizona*, 469 U.S. 1230, 105 S.Ct. 1234, 84 L.Ed.2d 371 (1985).

The trial court dismissed Villafuerte's first state post-conviction relief petition. Villafuerte did not appeal. Subsequently, Villafuerte commenced a second state post-conviction relief proceeding. In it, Villaf-

---

1. Kidnapping was charged as a felony that would support a felony murder conviction.

uerte attacked the trial court's failure to instruct the jury *sua sponte* on unlawful imprisonment, A.R.S. § 13–1303, as a lesser included offense to kidnapping. The trial court again denied relief and the Arizona Supreme Court affirmed the denial.

Villafuerte next filed a petition for a writ of habeas corpus in the federal district court for Arizona. In it, he alleged 26 grounds for a new trial, including the court's failure to instruct the jury on unlawful imprisonment. The court granted the state's motion for summary judgment. Villafuerte appealed.

## II. JURISDICTION

The district court had jurisdiction over Villafuerte's petition for a writ of habeas corpus under 28 U.S.C. § 2254. We have jurisdiction over his appeal under 28 U.S.C. §§ 1291 and 2253.

## III. STANDARD OF REVIEW

■■■ We review *de novo* a district court's decision to grant or deny a petition for habeas corpus. *Calderon v. Prunty,* 59 F.3d 1005, 1008 (9th Cir.1995). A state court's factual findings are entitled to a presumption of correctness under 28 U.S.C. § 2254(d). *Melugin v. Hames,* 38 F.3d 1478, 1482 (9th Cir.1994). However, a state court's determinations of mixed questions of law and fact are reviewed *de novo. Powell v. Gomez,* 33 F.3d 39, 41 (9th Cir.1994).

## IV. PROCEDURAL DEFAULT

As a threshold matter, we examine whether the federal courts have jurisdiction to review Villafuerte's claim that the state trial court erred in failing to instruct on unlawful imprisonment as a lesser included offense of kidnapping. The state argues, and the district court held, that the claim was procedurally barred because it was not raised until the second state post-conviction relief petition. This holding is erroneous.

The Arizona Superior Court denied this claim in its ruling on Villafuerte's second post-conviction petition. In doing so, it held:

Defendant starts this section of his brief claiming a right to an instruction on the crime of "unlawful imprisonment" as a lesser included of the crime of "kidnaping", [sic] as to which he was convicted. It is important to note, no such instruction was requested or given. Therefore, defendant has to claim fundamental error occurred. However, the Arizona Supreme Court reviewed this case in 1984 and found no fundamental error. The Arizona Supreme Court's determination of no fundamental error forecloses this [c]ourt from a reconsideration of the issue, even if it were not waived by a failure to raise it in the appeal.

After discussing other instructional errors, the Arizona Superior Court returned to the unlawful imprisonment issue:

It is inconceivable to believe that a jury which convicted him of theft of the car would turn around and return a verdict of "unlawful imprisonment" which is inconsistent with the theft verdict which had to be based on a belief he restrained the victim so he could take her car as well as prevent her from reporting to the police the assault upon her.

■■■ "Fundamental error" in Arizona is an appellate mechanism for considering and ruling on issues which were not presented to the trial court:

In extremely limited circumstances, we recognize that some issues may be so important that overriding considerations concerning the integrity of the system will excuse a party's failure to raise the issue in the trial court. This limited exception is known as the doctrine of "fundamental error." To qualify as "fundamental error," however, the error must be clear, egregious, and curable only via a new trial. We have held:

Fundamental error is error of such dimensions that it cannot be said it is possible for a defendant to have had a fair trial. It usually, if not always, involves the loss of federal constitutional rights. A claim of fundamental error is not a springboard to reversal where present counsel is simply second-guessing trial counsel.

*State v. Gendron,* 168 Ariz. 153, 155, 812 P.2d 626, 628 (1991) (citations omitted).

In capital cases, the Arizona Supreme Court commonly says that it has "searched the record for fundamental error." *See, e.g., State v. Martinez–Villareal,* 145 Ariz. 441, 452, 702 P.2d 670, 681 (en banc), *cert. denied,* 474 U.S. 975, 106 S.Ct. 339, 88 L.Ed.2d 324 (1985). In Villafuerte's case, the court said it had "reviewed the entire record pursuant to A.R.S. § 13–4035, and ha[d] found no reversible error." *Villafuerte,* 690 P.2d at 51. We attach no significance to the court's use of "reversible" rather than "fundamental" in Villafuerte's case.

We need not reach the question whether Arizona's "fundamental error" review, which is not mandated by statute in Arizona,[2] operates to prevent the state from later arguing that errors arguably within the definition of fundamental error are procedurally barred even though not specifically discussed by the Arizona Supreme Court. *See Woratzeck v. Lewis,* 863 F.Supp. 1079, 1095–96 (D.Ariz. 1994) (rejecting contention that fundamental error statement by Arizona Supreme Court eliminates procedural default).

The proper question in this case is not how we regard the fundamental error statement by the Arizona Supreme Court, but what effect the Arizona Superior Court gave it. In the decision quoted above, the Superior Court said:

1. The Arizona Supreme Court had considered the claim under its fundamental error review, so the Superior Court was foreclosed from reaching it;

2. In the absence of the Arizona Supreme Court's decision on fundamental error, the claim would be procedurally barred because it had not been raised in the direct appeal; and

3. The claim had no merit.

The Superior Court's order denying the second post-conviction petition is the last reasoned state court decision on this issue in Villafuerte's case, so we "look through" the Arizona Supreme Court's unexplained denial of review and consider the Superior Court's order. *Ylst v. Nunnemaker,* 501 U.S. 797,

804, 111 S.Ct. 2590, 2595, 115 L.Ed.2d 706 (1991).

The rules applicable to analysis of procedural default issues in federal habeas cases were summarized in *Coleman v. Thompson,* 501 U.S. 722, 734–35, 111 S.Ct. 2546, 2556–57, 115 L.Ed.2d 640 (1991):

> [F]ederal courts on habeas corpus review of state prisoner claims, like this Court on direct review of state court judgments, will presume that there is no independent and adequate state ground for a state court decision when the decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion." [Citation omitted.] In habeas, if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition.

■ The Superior Court's denial of Villafuerte's claim is ambiguous, because it did not "clearly and expressly" rely on Villafuerte's failure to raise the issue in his direct appeal as a procedural default of the claim. The first ground of the decision, that review in the post-conviction proceeding was barred because the Arizona Supreme Court had previously ruled on the merits of the claim in its finding of no fundamental error, would leave the claim subject to federal habeas review. *See Ylst,* 501 U.S. at 804 n. 3, 111 S.Ct. at 2595 n. 3. The last portion of the Superior Court's decision, which rejected the claim on its merits, would also leave the claim subject to later review in federal habeas, because it did not rely on the procedural bar to avoid a decision on the merits. In view of the uncertain basis of the Superior Court's ruling, the presumption of reviewability attaches, and the issue is properly before us. *See Siripongs v. Calderon,* 35 F.3d 1308, 1317–18

---

**2.** A.R.S. § 13–4035B provides: "Upon an appeal taken by a defendant from the judgment, the supreme court shall review the entire record."

(9th Cir.1994), *cert. denied,* ── U.S. ──, 115 S.Ct. 1175, 130 L.Ed.2d 1127 (1995).

## V. THE LESSER INCLUDED OFFENSE INSTRUCTION

We agree with Villafuerte that the trial court erred in failing to instruct on the lesser included offense to kidnapping, i.e., unlawful imprisonment, and that the error requires us to reverse because it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 623, 113 S.Ct. 1710, 1714, 123 L.Ed.2d 353 (1993).

### A. CONSTITUTIONAL ERROR

■ Our starting point is the principle that "[d]ue process requires ... that a lesser included offense instruction to a capital offense be given when the evidence warrants such an instruction. *See Hopper v. Evans,* 456 U.S. 605, 611, 102 S.Ct. 2049, 2052, 72 L.Ed.2d 367 (1982); *Beck v. Alabama,* 447 U.S. 625, 637–38, 100 S.Ct. 2382, 2389–90, 65 L.Ed.2d 392 (1980)." *Woratzeck v. Ricketts,* 820 F.2d 1450 (9th Cir.1987).

■ In this case, the evidence warranted the instruction and none was given. We inquire first: What is the lesser included offense that should have been instructed? In Arizona, there is no lesser included offense to felony murder. *See Woratzeck,* 820 F.2d at 1457. However, a jury must be given a meaningful choice between conviction of a capital crime and acquittal if the evidence would support a middle ground. "The failure to give the jury the 'third option' of convicting of a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction. Such a risk cannot be tolerated in a case in which the defendant's life is at stake." *Beck,* 447 U.S. at 637, 100 S.Ct. at 2389.

*Woratzeck,* in holding that second-degree murder is not a lesser included offense to felony murder, nonetheless found that Woratzeck's argument that the jury should have been instructed on theft, a lesser included offense of robbery (when robbery is one of the underlying felonies for the felony murder conviction) "is more persuasive." 820 F.2d at 1457. It declined, however, to decide the issue definitively "because even if the theft instruction should have been given, the trial judge's failure to do so would not have changed the outcome," *id.,* since the defendant was also convicted of burglary that would serve as a predicate for the felony murder charge.

In our case, we face the issue and must decide whether an instruction on a lesser included offense to kidnapping should have been given since, unlike *Woratzeck,* only the kidnapping charge supports felony murder. Villafuerte contends that the jury should have received an instruction on unlawful imprisonment "by knowingly restraining another person." A.R.S. § 13–1303. Unlawful imprisonment is essentially kidnapping but without a "wicked" goal such as intent to kill, injure, or rape. *See* A.R.S. § 13–1304.

Villafuerte's intent when he tied Schoville to the bed is the linchpin of his death sentence. The jury could not convict Villafuerte of felony murder unless it first convicted him of kidnapping. A.R.S. § 13–1105(A)(2). Likewise, the jury, as instructed, could not convict Villafuerte of kidnapping unless it found that he restrained Schoville with the intent to kill her, injure her, commit a sexual offense against her, rob her, or frighten her. A.R.S. § 13–1304(A)(3) and (A)(4). Yet Villafuerte's intent to accomplish one of these wicked ends was very much in issue throughout the trial. He claimed to be extremely intoxicated at the time, and there was ample corroborating evidence of his inebriated state. In closing argument his counsel repeatedly stressed the lack of such intent.

The jury was faced with the all-or-nothing choice condemned in *Beck.* It could find a lack of such intent to kidnap and acquit Villafuerte of the charges that resulted in the felony murder conviction. Alternatively, it could convict him of kidnapping which would automatically result, because of Schoville's death, in a felony murder conviction. The jury had no option for a middle ground (i.e., knowingly restraining Schoville); its choice was felony murder or acquittal. The safety valve of a "third option" was missing. *Beck* requires that third option "to eliminate the distortion of the fact-finding process that is

created when the jury is forced into an all-or-nothing choice between capital murder and innocence." *Spaziano v. Florida*, 468 U.S. 447, 455, 104 S.Ct. 3154, 3159, 82 L.Ed.2d 340 (1984).

■ In a nutshell, what made it essential to give the lesser included offense instruction here is that Villafuerte, due to his inebriated condition, might not have had the requisite intent to commit the felony that was the sine qua non of his first-degree murder conviction. In Arizona, there is no lesser included offense to felony murder itself, and conviction of first-degree murder automatically follows as night the day when death results from conduct that is defined by law as a felony that mandates a conviction of felony murder if death results. In other words, in such a case, conviction of the predicate felony sounds the death knell. Therefore, the *only* meaningful third choice is instruction on a lesser included offense to the predicate felony. That choice is supported by the evidence in this case: the jury could have found that because of drunkenness the defendant had only intent consistent with unlawful imprisonment, not kidnapping.

The Supreme Court, in its analysis in *Schad v. Arizona*, 501 U.S. 624, 646–47, 111 S.Ct. 2491, 2504–05, 115 L.Ed.2d 555 (1991), although holding that instruction on more than one lesser included offense was not necessary, took considerable pains to point out that the lesser included offense instruction for second-degree murder allowed the jury to convict of a lesser crime, one that was fully supported by the evidence. *Id.* at 647–48, 111 S.Ct. at 2505–06. Here, where because of the death of the victim, conviction of kidnapping automatically triggered the first-degree murder conviction, the only meaningful third choice was unlawful imprisonment.

*Keeble v. United States*, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973), relied upon by the Court in *Beck*, supports our analysis. The *Keeble* Court held that where crimes are charged on Indian reservations, lesser included offense instructions are mandated if evidence in the record could support the lesser charge. In *Keeble*, the jury convicted the defendant of assault with intent to commit serious bodily injury after the judge re-

fused an instruction on simple assault. *Id.* at 206, 93 S.Ct. at 1994. Reversing, the Supreme Court reasoned that "the nature of [the defendant's] intent was very much in dispute at trial," and the lack of a "third option" between acquittal and aggravated assault rendered untrustworthy the jury's intent findings. *Id.* at 212–13, 93 S.Ct. at 1997–98. Although relying on statutory interpretation for its holding, the Court noted that a contrary decision would "raise difficult constitutional questions," *id.* at 213, 93 S.Ct. at 1998, questions later answered in *Beck*, at least as to capital crimes. The reasoning of *Keeble* is directly applicable here.

Decisions of the Arizona courts are consistent with and inform our decision. In *State v. Detrich*, 178 Ariz. 380, 873 P.2d 1302 (1994), the Supreme Court of Arizona sitting en banc presented with the identical issue and very similar facts to those we face reached the exact holding that we reach today. The defendant in *Detrich* was convicted of kidnapping as a predicate to a felony murder conviction and was sentenced to death. *Id.*, 873 P.2d at 1303. The Arizona Supreme Court reversed, holding that the trial court violated the defendant's right to an instruction on unlawful imprisonment as a lesser included offense to kidnapping. *Id.*, 873 P.2d at 1306; *see also State v. Flores*, 140 Ariz. 469, 682 P.2d 1136 (Ct.App.1984) (same holding). The court reasoned that the defendant may have lacked the necessary intent for a kidnapping conviction, especially because the defendant was intoxicated at the time. *Detrich*, 873 P.2d at 1305. This decision rested in part on *State v. Lucas*, 146 Ariz. 597, 708 P.2d 81 (1985), which in turn rested in part on *Beck*.

*Detrich* also bears on another issue to which we have given serious consideration: whether the sentence enhancement for "dangerous" kidnapping should alter the analysis in this case. *Detrich* makes the point, with which we agree, that because use of a dangerous instrument could be the sole basis for a dangerousness finding, such a finding cannot be relied upon to establish intent.

In *Detrich*, the defendant held a knife to the victim's throat. *Id.*, 873 P.2d at 1303. In our case, Schoville was gagged. The jury's

finding of "dangerousness" did not depend on a finding that Villafuerte had one of the wicked kidnapping intents. The judge instructed the jury that "dangerousness" means *either* "use of a dangerous instrument" or "intentional or knowing infliction of serious physical injury." Here, the jury could have found that the gag was a dangerous instrument without finding that Villafuerte had a wicked intent. The jury could have convicted of kidnapping to avoid acquitting Villafuerte, and then found itself required to find dangerousness because the gag was a "dangerous instrument." The enhancement is thus irrelevant to the conviction of first-degree murder, as it is the conviction of kidnapping accompanied by the death of the victim that triggers the first-degree murder conviction, not the finding of dangerousness.

## B. SUBSTANTIAL AND INJURIOUS EFFECT

 A federal court that finds that a state court's trial error violated a defendant's federal constitutional rights may not grant habeas relief unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 623, 113 S.Ct. at 1714.[3] We conclude that the instant error had a "substantial and injurious effect," entitling Villafuerte to federal habeas relief.

The jury had an all-or-nothing choice. It could find that when Villafuerte tied Schoville to the bed, he intended to commit a heinous act such as murder or rape, despite his argument that he was drunk at the time and could not have formed this intent. Alternatively, it could find a lack of such intent and acquit Villafuerte, despite the fact that his grotesque behavior caused the death of an innocent woman. For the policy reasons set forth in *Beck,* 447 U.S. at 637, 100 S.Ct. at 2389, the jury's verdict convicting of felony murder is inherently untrustworthy. " 'The goal of the *Beck* rule ... is to eliminate the distortion of the fact-finding process [i.e. the risk that the jury will convict simply to avoid setting the defendant free] that is created when the jury is forced into an all-or-nothing choice between capital murder and innocence.' " *Schad,* 501 U.S. at 646, 111 S.Ct. at 2504 (quoting *Spaziano,* 468 U.S. at 455, 104 S.Ct. at 3159–60).

The trial court's failure to instruct the jury on unlawful imprisonment prevented the jury from considering whether to convict Villafuerte of a serious but non-capital crime against Schoville. This error was clearly "substantial and injurious." In the words of Justice Stevens' concurrence that provided the fifth vote in *Brecht,* "the question is ... what effect the error had or reasonably may be taken to have had upon the jury's decision." 507 U.S. at 642–43, 113 S.Ct. at 1724 (Stevens, J., concurring). Without a "third option," the court forced the jury into an all-or-nothing decision, which "reasonably may be taken to have" distorted the fact-finding process. *See Beck,* 447 U.S. 625, 100 S.Ct. 2382.

Our recent decision in *Wade v. Calderon,* a death penalty case, granted habeas relief because it found "substantial and injurious" the trial court's failure in the sentencing phase to define intent when instructing the jury on torture. 29 F.3d at 1320. The court reasoned, "the effect of the error was to permit the jury to find [the defendant] eligible for the death penalty without having to make any findings of his intent to torture." *Id.* at 1322. *Wade* emphasized that the defendant's intent lies at the heart of a capital case, and that incomplete instructions on intent undermined the reliability of the jury's delibera-

---

3. While *Brecht* concerns habeas review in general, *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), concerns habeas review of instructional error. Habeas review under both standards being "a bit redundant," *Suniga v. Bunnell,* 998 F.2d 664, 667 (9th Cir.1993), review under one will suffice. The portions of *Estelle* based on *Boyde v. California,* 494 U.S. 370, 380, 110 S.Ct. 1190, 1197–98, 108 L.Ed.2d 316 (1990) (whether there is a "reasonable likelihood" the jury misapplied the instructions), are limited to ambiguous instructions, *Wade v. Calderon,* 29 F.3d 1312, 1320–20 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 923, 130 L.Ed.2d 802 (1995), and are thus inapposite here. The portions of *Estelle* based on *Cupp v. Naughten,* 414 U.S. 141, (1973), largely prohibit courts from reviewing jury instructions in "artificial isolation" from the trial as a whole. Accordingly, we find *Brecht* the appropriate standard of review.

tions. We conclude that the failure to instruct the jury on unlawful imprisonment had a "substantial and injurious" effect on the reliability of the jury's deliberations.

## VI. REMAINING FEDERAL CONSTITUTIONAL ISSUES

 Villafuerte raises a number of other federal constitutional challenges to his conviction and sentence. Some of the issues he raises will likely arise in the event he is retried. As a matter of judicial economy and to provide guidance to the state court in the event of a retrial, we consider these federal constitutional challenges and conclude none has merit. *See In re Blodgett*, 502 U.S. 236, 239–40, 112 S.Ct. 674, 676, 116 L.Ed.2d 669 (1992) (federal courts should avoid piecemeal resolution of issues and unnecessary delay).

Villafuerte argues he was deprived of his federal constitutional rights because (1) the state allegedly failed, in bad faith, to conduct a thorough investigation which could have turned up exculpatory evidence; (2) the state trial court admitted Villafuerte's post-arrest statements which were involuntary because his *Miranda* rights were violated; (3) the state trial court permitted non-Spanish speaking officers to testify regarding statements Villafuerte made in Spanish; (4) probable cause for Villafuerte's arrest without a warrant was lacking, his arrest was unlawful, and evidence obtained as a result of his arrest should have been excluded; and (5) Villafuerte's trial was rendered fundamentally unfair because the state trial court admitted into evidence inflammatory and unduly prejudicial photographs of the victim and crime scene.[4]

### A. STATE'S INVESTIGATION

Villafuerte contends the state acted in bad faith by failing to gather and preserve potentially exculpatory evidence. Specifically, he argues the state (1) did not conduct a diligent search to locate three individuals who, according to Villafuerte, were at the trailer on the day of the murder; (2) did not obtain fingerprints from the bed frame or the door knob and lock on the front door; and (3) did not test the semen sample collected from the victim to compare the sample to Villafuerte's blood type. Villafuerte argues that had the state collected this evidence, the evidence may have been exculpatory.

 The state's failure to collect and preserve potentially exculpatory evidence violates Villafuerte's due process rights only if Villafuerte demonstrates the officers acted in bad faith. *Miller v. Vasquez*, 868 F.2d 1116, 1120 (9th Cir.1989), *cert. denied*, 499 U.S. 963, 111 S.Ct. 1591, 113 L.Ed.2d 654 (1991); *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 337–38, 102 L.Ed.2d 281 (1988). The record as it now stands does not support a conclusion that the state acted in bad faith.

With regard to the search for the three individuals, Villafuerte asserts these three individuals were at the trailer on the day he tied Schoville to the bed and gagged her[5] and, if located, may have provided evidence concerning the murder. Villafuerte did not provide any information that would have facilitated locating the individuals. He only stated that "Robert" and "Fernando" were at the trailer. Nevertheless, the officers investigating the murder questioned neighbors about other individuals staying at the trailer. In addition, after finding a food stamp application in the name of "Robert Grady," Detective Oviedo ran a check on the name in the Phoenix police records and called the Department of Economic Security. Because neither check produced a lead, Detective Oviedo did not pursue the matter further.

Villafuerte, on the other hand, had the most information about the individuals. He said he saw them at the trailer, but he refused to describe them to his counsel when requested to do so. He speculates the officers acted in bad faith because his investiga-

---

4. Villafuerte has never challenged the state court's factual findings on the ground they do not satisfy the requirements set forth in *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). Accordingly, any such claim has been waived.

5. Villafuerte has made inconsistent statements about two of the individuals. During post-arrest interviews with police officers, he stated the individuals left the trailer at the same time he did. Only later did Villafuerte allege two individuals remained at the trailer when he left.

tor appointed by the state trial court for the state post-conviction proceeding said Detective Oviedo told her he did nothing to locate the individuals. These circumstances do not support a finding of bad faith.

 With regard to the fingerprints, the officers did not have a constitutional duty to perform all tests desired by Villafuerte. *Cf. Youngblood,* 488 U.S. at 59, 109 S.Ct. at 338. Villafuerte does not specify why he believes the failure to test for fingerprints in certain areas constitutes bad faith. His argument is limited to an assertion that the officers were negligent. Even assuming the officers were negligent, a negligent investigation does not violate Villafuerte's due process rights. *See id.* at 58, 109 S.Ct. at 337–38.

 Nor did the failure to conduct tests on the semen sample violate Villafuerte's due process rights. The record contains no evidence that the semen sample could have had exculpatory value which was apparent at the time the officers failed to perform the tests. *See Mitchell v. Goldsmith,* 878 F.2d 319, 322 (9th Cir.1989). Villafuerte's own expert testified there was only a one to five percent chance of conducting a successful test due to the delay in obtaining the sample.[6] Villafuerte has failed to demonstrate the officers acted in bad faith by failing to test the sample. *Id.*

**B. POST–ARREST STATEMENTS**

Villafuerte argues the statements he made after his arrest were involuntary and, consequently, the state trial court erred by admitting them at trial. Specifically, Villafuerte alleges the statements were rendered involuntary because the card he signed waiving his *Miranda* rights was printed in English, which he says he could not read.

 The ultimate determination as to whether Villafuerte's statements were involuntary is a legal question which we review independently. *Miller v. Fenton,* 474 U.S. 104, 115, 106 S.Ct. 445, 452, 88 L.Ed.2d 405

(1985). The state trial court's underlying factual findings, however, are entitled to a presumption of correctness. *Id.* at 117, 106 S.Ct. at 453; *Derrick v. Peterson,* 924 F.2d 813, 817 (9th Cir.1990), *cert. denied,* 502 U.S. 853, 112 S.Ct. 161, 116 L.Ed.2d 126 (1991). In analyzing whether statements were voluntary, we must consider the totality of the circumstances. *Derrick,* 924 F.2d at 817. We examine Villafuerte's language difficulties in this context. *United States v. Bernard S.,* 795 F.2d 749, 751–52 (9th Cir.1986).

 We conclude Villafuerte was fully apprised of his *Miranda* rights and voluntarily waived them. In the proceedings before the state trial court, Villafuerte did not dispute the factual findings made by the court at the voluntariness hearing. The findings demonstrate that Villafuerte repeatedly received *Miranda* warnings in both English and Spanish and that he understood his rights.

On the afternoon of his arrest, Officer Hernandez gave Villafuerte *Miranda* warnings in Spanish and learned Villafuerte understood basic spoken English. Officer Hernandez then explained Villafuerte's *Miranda* rights to him in English and gave him a card with the *Miranda* warnings printed in Spanish. Villafuerte read the card and said he understood his rights. Officer Hernandez again explained the *Miranda* rights in Spanish and Villafuerte again acknowledged he understood them.

Before interviewing Villafuerte later that day, Agent Prida translated in Spanish a *Miranda* waiver card printed in English. Villafuerte said he understood his rights and signed the card. The card contained all the appropriate *Miranda* warnings.

Because Villafuerte received explanations of his *Miranda* rights in both English and Spanish and he consistently stated he understood his rights, we conclude his statements were voluntary. *See Bernard S.,* 795 F.2d at 752; *United States v. Heredia–Fernandez,* 756 F.2d 1412, 1415–16 (9th Cir.), *cert. de-*

---

6. The delay in obtaining the sample is not attributable to the officers. The victim was murdered on February 21, 1983. Villafuerte was arrested on February 22, 1983, but did not inform officers he had beaten and bound the victim until the afternoon of February 23, 1983. Later that afternoon, officers discovered the victim, and the autopsy was performed the next morning, on February 24, 1983.

*nied,* 474 U.S. 836, 106 S.Ct. 110, 88 L.Ed.2d 90 (1985).

There also is no indication of any police coercion or improper promises. Nor is there any indication Villafuerte was still intoxicated at the time of his interviews. The first interview did not occur until the morning after his arrest.

The state trial court did not err by admitting Villafuerte's post-arrest statements.

## C. TESTIMONY BY NON–SPANISH SPEAKING OFFICERS

 Villafuerte argues the state trial court deprived him of his right to due process by admitting the testimony of non-Spanish speaking officers regarding statements he made.

The morning after Villafuerte's arrest, Deputy Augenstein, who does not speak Spanish, questioned Villafuerte through Officer Hernandez, who does. The same afternoon, Detective Schubert, who does not speak Spanish, questioned Villafuerte through Agent Prida, who does. At trial, the state trial court permitted the two non-Spanish speaking officers to testify as to statements made by Villafuerte during these interviews. Villafuerte argues the state trial court erred by admitting this testimony because the non-Spanish speaking officers merely heard interpretations of his statements from the Spanish speaking officers. We disagree.

Officer Hernandez and Agent Prida corroborated the testimony of Deputy Augenstein and Detective Schubert. Villafuerte also corroborated most of their testimony. Further, Villafuerte had ample opportunity to cross-examine Deputy Augenstein and Detective Schubert to test their credibility and the veracity of their testimony.

The admission of Villafuerte's statements did not render his trial fundamentally unfair in violation of the federal Constitution.

*Butcher v. Marquez,* 758 F.2d 373, 378 (9th Cir.1985).

## D. WARRANTLESS ARREST

 Villafuerte argues his arrest was unlawful and, therefore, the state trial court erred by admitting evidence obtained as a result of the arrest.[7] Villafuerte argues the officers did not have authority to arrest him without a warrant for the misdemeanor of disorderly conduct because he did not commit the offense in the officers' presence.

 Our review of a federal habeas corpus petition is limited to alleged violations of federal law. *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 874, 79 L.Ed.2d 29 (1984). Villafuerte's complaint that the arrest was warrantless raises only an issue of state law. "The requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment." *Barry v. Fowler,* 902 F.2d 770, 772 (9th Cir.1990).

 Villafuerte's Fourth Amendment rights were violated only if the officers lacked probable cause to arrest him. *Id., United States v. Hoyos,* 892 F.2d 1387, 1392 (9th Cir.1989), *cert. denied,* 498 U.S. 825, 111 S.Ct. 80, 112 L.Ed.2d 52 (1990). Probable cause exists if the circumstances indicate a reasonable person could believe Villafuerte had committed an offense. *Hoyos,* 892 F.2d at 1392.

 Probable cause existed for Villafuerte's arrest for disorderly conduct. Deputy Augenstein responded to a report that an Hispanic male in a white car was causing damage to certain quarries. Upon arriving at the scene, Deputy Augenstein discovered the red and white car Villafuerte had been driving and saw him asleep in a dry creek bed approximately 100 feet from the car. The front end of the car was damaged, and the damage was consistent with the car having been driven into and over the rocks. In

---

**7.** Villafuerte is not entitled to federal habeas corpus relief for his Fourth Amendment claim if he received a full and fair opportunity to litigate that claim in state court. *Stone v. Powell,* 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976). Villafuerte first raised his unlawful arrest claim in his post-conviction proceedings in state court. He had a full and fair opportunity to litigate the issue in that court. We consider the Fourth Amendment issue only to avoid unnecessary delay or piecemeal litigation of issues.

these circumstances, Deputy Augenstein could have reasonably believed Villafuerte was the individual responsible for damaging the quarries. There was probable cause for his arrest.

## E. ADMISSION OF PHOTOGRAPHS

Finally, Villafuerte argues the state trial court erred by admitting photographs depicting blood at the crime scene, the wrapping of the victim's head, and the bindings on the victim. Villafuerte contends the prejudice resulting from the admission of these photographs far outweighed their probative value.

To violate due process, Villafuerte must demonstrate the erroneous admission of the photographs rendered his trial fundamentally unfair. *Butcher*, 758 F.2d at 378. The photographs were relevant to the charge of dangerous kidnapping. Specifically, the photographs were relevant to prove Villafuerte knowingly restrained the victim, with the intent to kill, injure, rape, or frighten her. The admission of the photographs did not deprive Villafuerte of a fair trial.

## VII. CONCLUSION

We have examined all of Villafuerte's claims of error, during pretrial, at trial, and at sentencing. Although we reverse on one trial error only, we have decided in this appeal those trial errors that have bearing on his conviction that might be likely to arise on retrial.

We reverse and direct the district court to grant the writ of habeas corpus unless the State of Arizona retries Villafuerte within a reasonable period of time.