533 P.2d 1146

**STATE of Arizona, Appellee,**

**v.**

**James Robert WILLIAMS, Appellant.**

**No. 2984.**

Supreme Court of Arizona,
In Banc.

April 10, 1975.

N. Warner Lee, Atty. Gen., by Thomas A. Jacobs, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by John Foreman, Deputy Public Defender, Phoenix, for appellant.

HOLOHAN, Justice.

James Robert Williams appeals from his conviction and sentence for committing lewd and lascivious acts in violation of A.R.S. § 13–652. He was sentenced to the Arizona State Prison for a term of one to one and a half years.

The defendant and the complaining witness, a young Phoenix woman, had gone to a late-night party. Afterwards, according to the complaining witness, the defendant took her to a north Phoenix location, raped her and made her engage in an act of fellatio. The defendant took the witness stand and claimed that the woman consented to these sexual activities.

The jury acquitted Williams of the rape allegation, but found him guilty of the lewd and lascivious acts charge.

While a number of issues were raised by appellant, we believe that one issue is dispositive of this case: whether attack on the testimony of a defense witness was either proper impeachment by prior inconsistent statements or proper rebuttal of character evidence.

The defendant's mother, Kathryn Williams, testified during direct examination that she had previously seen the complaining witness and the defendant sleeping together. She also described the circumstances of her son's arrest the morning after the incident in question. Among closing inquiry by defense counsel, the following transpired:

"Q Do you consider him [the defendant] to be a normal male, as far as sexual activities go?

"A I would say so.

"Q Do you think that your son ever was or could be a rapist?

"A I don't believe so. Not at all."

The prosecutor claimed that the defense had thus "opened the door" 1) to evidence that the witness had previously made statements inconsistent with that position or 2) to an inquiry into the defendant's character. Over strenuous objections of defense counsel, the State was permitted to show that Mrs. Williams had allegedly made contrary indications to police as to the sexual activities of her son. The subject matter of the admitted evidence dealt with an alleged rape of the witness' daughter by her son, the defendant, six years previous to the current charge.

On cross-examination of Mrs. Williams, the prosecutor laid the foundation for his attack. To his questioning, she denied telling her son in 1968 to move out of their home or telling a particular police officer three months before trial in January, 1974, that she had heard that her daughter Patricia had been "involved in some sort of activity" with her son, the defendant. She also denied telling the officer that she once sent Patricia out of state because she "thought it was the best thing to do."

The officer took the witness stand to contradict Mrs. Williams' denials:

"Q Did she have any recollection, when she talked to you, of *an incident* in Detroit in 1968 on her birthday, September 29, 1968, and part of 1969 *involving activities as to the defendant and her daughter*? Did she ever tell you that?

"A Yes, she did.

. . . . .

"A In response to my question, of where her daughter Patricia was living at, she said—Mrs. Williams, Kathryn Williams, told me at that time back in January—that the daughter was living in, back east somewhere with an older son or a married daughter. I asked her why she had, why Mrs. Williams had *spirited*, taken her daughter Patricia out of the state of Michigan *prior to the criminal case coming up in Court*." (emphasis added)

In surrebuttal, the defense attorney put the daughter, Patricia Williams, on the witness stand. She denied having been sent away by her mother. She then answered negatively to defense counsel's

questions as to whether she had ever been raped or had sexual intercourse with her brother, the defendant. She also stated that she had no knowledge of her brother as being a rapist.

A former policewoman, Judith Sherman, was then brought in by the prosecution to testify that Patricia Williams had told her that the defendant had raped her in 1968 and that the mother made the defendant move out of the house. In connection with a subsequent criminal proceeding presumably connected with the alleged incident, Mrs. Sherman stated that the Williams women failed to appear and that the mother informed her that Patricia had been sent out of state and she had no intention of coming to court.

Timely objections were made by defense counsel to the testimony of the policeman and Mrs. Sherman. The trial judge gave the following cautionary instruction to the jury:

> "The testimony of Mrs. Sherman was admitted solely for the purpose of attempting to discredit the credibility of Mrs. Williams and Patricia Williams and not for the purpose of proving the truth of the matter stated."

No such limiting instruction was given as to the police officer's testimony.

The State maintains that the challenged evidence, by way of testimony of the policeman and Judith Sherman is admissible on any of several theories. It is claimed that the testimony was proper as either 1) impeaching Mrs. Williams' credibility by showing prior statements inconsistent with her claim that she considered her son was normal sexually and incapable of being a rapist or 2) rebuttal of Mrs. Williams' claim of her son's good character.

As to the State's first theory, impeachment by contradiction upon irrelevant, collateral matter is not permissible. State v. Little, 87 Ariz. 295, 350 P.2d 756 (1960). It is well settled that where a witness denies the making of a prior inconsistent statement and the statement relates to a

matter collateral to the issues being tried, the impeaching party is bound by the witness' answer and can't produce extrinsic evidence to contradict the witness. State v. Mangrum, 98 Ariz. 279, 403 P.2d 925 (1965); Crowell v. State, 15 Ariz. 66, 136 Pac. 279 (1913); Udall, Arizona Law of Evidence, § 63.

The matter sought to be impeached concerned an alleged sexual attack on the sister by the defendant six years earlier. The test as to whether testimony offered in contradiction is admissible, and not collateral, is:

> " . . . would it be admissible for some purpose other than the mere contradiction, or would the evidence of the fact stated in prior inconsistent statements be admissible." State v. Mangrum, *supra*, 98 Ariz. at 286.

Should evidence of Williams' sexual misconduct in 1968 be admissible on some other grounds than for the contradiction of Mrs. Williams, then the matter would not be collateral and could be used to impeach Mrs. Williams.

We have recently sought to eliminate the confusion that existed as to the issue of whether acts of sexual misconduct should be admitted in evidence in the prosecution of a defendant for a sex offense. State v. McFarlin, 110 Ariz. 225, 517 P.2d 87 (1973). Evidence of prior bad acts is generally inadmissible except where such acts show a plan, scheme or device. State v. McFarlin, *supra*; State v. Kelly, 111 Ariz. 181, 526 P.2d 720 (1974). Also,

> "[i]n those instances in which the offense charged involves the element of abnormal sex acts such as sodomy, child molesting, lewd and lascivious, etc., there is sufficient basis to accept proof of similar acts near in time to the offense charged as evidence of the accused's propensity to commit such perverted acts." State v. McFarlin, *supra*, 110 Ariz. at 228.

The subject matter of the impeachment in issue concerned an alleged rape in 1968. Its circumstances do not suggest a

plan, scheme or device that would be relevant to the rape for which Williams was being tried. Nor is the evidence admissible as showing "emotional propensity" to commit such acts under State v. McFarlin, *supra,* since the 1968 act to which reference was made focused on rape and did not involve sodomy, child molesting, or lewd and lascivious activity. Nor are any other exceptions to the general rule excluding prior bad acts applicable, such as for demonstrating intent, guilty knowledge, identity, or motive. The fact that one woman was raped is not substantial evidence that another did not consent. Lovely v. United States, 169 F.2d 386 (4th Cir. 1948), *cited with approval in* State v. McFarlin, *supra.*

Consequently, evidence of the alleged prior bad act of Williams would not be admissible for any purpose under the test set forth in State v. Mangrum, *supra.* The subject matter is therefore collateral to the issue of Williams' guilt or innocence for the offenses charged.

Nor does State v. Skinner, 110 Ariz. 135, 515 P.2d 880 (1973)—admitting prior inconsistent statements substantively as well as for impeachment—have any application. The witness sought to be impeached here is an opponent's witness and the prior statement could not be admitted for impeachment in the first place since it concerns collateral issues.

■ The prosecutor was entitled to ask Mrs. Williams if she had made previous statements inconsistent with her testimony on direct examination. However, since her prior statements to the policeman were collateral to the issues being tried, the prosecutor was bound by Mrs. Williams' answers to his inquiries. The trial judge should have disallowed the resulting parade of witnesses.

■ The extended use of the collateral matter was not cured by the judge's instructions limiting the jury's consideration of Judith Sherman's testimony. Her testimony was improper impeachment and could not be considered for any purpose. Moreover, there was no admonition as to the policeman's testimony which referred ambiguously to "activities" of Williams and his sister, the sister being "spirited" out of state, and a related "criminal case."

■ Besides being improper impeachment, the officer's testimony could only serve to confuse the jury by insinuation and innuendo based upon hearsay. A prosecutor "cannot engage in questions which cast insinuations without being prepared and able to prove the insinuations." State v. Van Winkle, 106 Ariz. 481, 483, 478 P. 2d 105, 107 (1970); State v. Stago, 82 Ariz. 285, 312 P.2d 160 (1957). Because of our rule forbidding impeachment on collateral issues, the prosecutor would not have been "able" to prove the insinuations borne by the police officer.

■ As another theory, the State argues that the cross-examination of Mrs. Williams and rebuttal testimony was a proper attack on the defendant's character, put in issue during the direct examination of Mrs. Williams. The mother had stated that she thought her son was normal in sexual activities and that she didn't believe he was ever or could be a rapist. Even if Mrs. Williams' testimony could be construed as vouching for her son's good moral character or reputation, the prosecutor did not properly rebut that testimony.

■ Where evidence of good character is offered, the cross-examination should be limited

".  .  . to questions as to the source from which the witness has obtained his knowledge of the reputation of the defendant, and, when he states those sources, permitting questions as to what he has heard therefrom regarding such reputation." Viliborghi v. State, 45 Ariz. 275, 286, 43 P.2d 210, 215 (1935); State v. Thomas, 79 Ariz. 355, 290 P.2d 470 (1955); Udall, Arizona Law of Evidence, § 114.

The cross-examination may not include inquiry into the witness' knowledge of specific acts of misconduct. Viliborghi v. State, *supra;* Udall, Arizona Law of Evidence, § 114. The method of attacking character once it is properly in issue, is not by showing particular bad acts, but by in-

quiries as to the sources of the witness' knowledge of the defendant's reputation. The attack of the adverse party must concentrate on the issue of the reputation itself. It is improper to impeach the character witness by showing prior inconsistent statements on collateral matters which have the effect of revealing specific acts of misconduct by the accused.

Therefore, the state cannot argue that the cross-examination of Mrs. Williams and the testimony of the policeman and Mrs. Sherman were proper rebuttal to character evidence. The prosecutor made no attempt to discover the sources and reports for Mrs. Williams' statements about the normalcy of her son's sexual activities. The cross-examination and rebuttal witnesses focused on an alleged specific act of misconduct by the defendant in 1968. This clearly exceeded the scope of inquiry available to the state.

Whether viewing the error as erroneous impeachment by collateral matter or improper rebuttal of character evidence, the circumstances were prejudicial to the defendant's right to a fair trial. Allegations and insinuations of an incestuous rape of a young girl, six years before the present offense, was purely collateral. It was an improper subject of impeachment by prior inconsistent statements and improper rebuttal material as to character evidence. It could only serve to confuse the jury and perhaps lead them to punish the defendant for being a bad person.

Due to the limited nature of the evidence in this case—the defendant's word against the word of the prosecuting witness—we cannot say beyond a reasonable doubt that the error did not contribute to Williams' conviction for the lewd and lascivious act. State v. Green, 110 Ariz. 293, 518 P.2d 116 (1974). To that charge the defendant is entitled to a new trial.

Judgment reversed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and LOCKWOOD and HAYS, JJ., concur.