# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ARMANDO CASTILLO,<br>*Petitioner-Appellant,*<br><br>v.<br><br>JAMES MCFADDEN; ARIZONA<br>ATTORNEY GENERAL,<br>*Respondents-Appellees.* | No. 03-15715<br><br>D.C. No.<br>CV-02-00466-PGR<br><br>ORDER<br>AMENDING<br>OPINION AND<br>DISSENT AND<br>DENYING<br>PETITION FOR<br>PANEL<br>REHEARING AND<br>PETITION FOR<br>REHEARING EN<br>BANC AND<br>AMENDED<br>OPINION |

Appeal from the United States District Court
for the District of Arizona
Paul G. Rosenblatt, District Judge, Presiding

Argued and Submitted
February 12, 2004—San Francisco, California

Opinion Filed June 1, 2004
Amended February 24, 2005

Before: Pamela Ann Rymer, Michael Daly Hawkins, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Bybee;
Dissent by Judge Hawkins

2151

## COUNSEL

Anders V. Rosenquist, Jr., and Florence M. Bruemmer, Rosenquist & Associates, Phoenix, Arizona, for the petitioner-appellant.

John L. Saccoman, Assistant Attorney General, Phoenix, Arizona, for the respondents-appellees.

## ORDER

The opinion and dissent filed on June 1, 2004 and published at 370 F.3d 882 (9th Cir. 2004), are hereby amended. The amended opinion and amended dissent are filed concurrently herewith. The Opinion and Dissent are amended as follows:

1.   At slip op. 6914, first full paragraph, line 11; 370 F.3d at 886, second full paragraph, line 17, delete "In short, the petitioner must have either referenced specific provisions of the federal constitution . . . or cited to federal case law."

2.   At slip op. 6914, first full paragraph, line 15; 370 F.3d at 886, second full paragraph, line 22, insert the following: "Consistent with the recognition that state and federal courts are jointly responsible for interpreting and safeguarding constitutional guarantees, we have held that citation to either a federal or state case involving the legal standard for a federal constitutional violation is sufficient to establish exhaustion. *See id.*; *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc) ("[F]or purposes of exhaustion, a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue."). In short, the petitioner must have either referenced specific provisions of the federal constitution or cited to federal or state cases involving the legal standard for a federal constitutional violation."

3.    At slip op. 6914, second full paragraph, line 20; 370 F.3d at 887, line 13, insert the following after the phrase "or cite any federal": "or state."

4.    At slip op. 6917, first full paragraph, line 5; 370 F.3d at 888, second full paragraph, line 7, insert the following after the word "relevant": "state or federal."

5.    At slip op. 6917, first full paragraph, line 17; 370 F.3d at 888, second full paragraph, line 28, insert the following before "Citation": "Similarly, none of the state cases relied on by Castillo to support his third point of error involved the express invocation, explanation or discussion of due process standards. *E.g., State v. Hughes*, 189 Ariz. 62, 938 P.2d 457 (1997) (en banc) (criminal appeal construing the Arizona Rules of Evidence); *State v. Miller*, 186 Ariz. 314, 921 P.2d 1151 (1996) (criminal appeal discussing waiver and fundamental error under the Arizona Rules of Evidence); *State v. McVay*, 127 Ariz. 450, 622 P.2d 9 (1980) (criminal appeal construing the Arizona Rules of Evidence); *State v. Williams*, 111 Ariz. 511, 533 P.2d 1146 (1979) (criminal appeal reviewing admissibility of evidence); *Maxwell v. Aetna Life Ins. Co.,* 143 Ariz. 205, 693 P.2d 348 (App. 1984) (civil appeal applying doctrine of fundamental error); *Hinson v. Phoenix Pie Co.,* 3 Ariz. App. 523, 416 P.2d 202 (App. 1966) (civil appeal construing the Arizona Rules of Civil Procedure)."

6.    At slip op. 6917, first full paragraph, line 18; 370 F.3d at 888, second full paragraph, line 29, insert the following after "irrelevant federal": "or state."

7.    At slip op. 6925, second full paragraph and the carryover paragraph on page 6926, 370 F.3d at 893, first full paragraph, replace paragraph with the following: "To raise the federal legal theory for purposes of exhaustion, *Lyons v. Crawford*, 232 F.3d 666, 669-70 (9th Cir. 2000), as modified by 247 F.3d 904 (9th Cir. 2001), a petitioner must simply characterize a claim as federal in nature, by either referencing

specific provisions of the Constitution or citing to federal or state case law analyzing the federal constitutional issue. *See Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc). Castillo did both, citing specific provisions of the Constitution and federal cases. He went further, referencing his Fourteenth Amendment right to due process in his conclusion.[5] Considering that he had also mentioned that he was denied a fair trial in violation of the Constitution in the context of his argument about the videotape,[6] he met his burden."

8.   At slip op. 6926, second full paragraph; 370 F.3d at 893, third full paragraph, replace paragraph with the following: "The majority relies on *Johnson* and *Hiivala*. 88 F.3d at 830-31; 195 F.3d at 1106. But, in *Johnson*, the petitioner made no specific reference to the Constitution or federal case law. 88 F.3d at 830-31. Similarly, in *Hiivala*, we held that the petitioner failed to exhaust his claims when he argued to the state court that the evidence was insufficient to support a state law conviction, but made no reference to the Due Process Clause, the Fourteenth Amendment, nor any federal or state cases involving the legal standard for a federal constitutional violation. 195 F.3d at 1106-07. Thus, *Hiivala* and *Johnson* are clearly distinguishable from this case, where Castillo did all three."

---

[5]The majority notes that "citation of a relevant federal constitutional provision in relation to some other claim does not satisfy the exhaustion requirement." But Castillo did not reference violation of his Fourteenth Amendment due process rights in relation to another specific claim, for instance, as a part of either of his other argument sections. Had he done so, of course the state court should not be charged with assuming that the reference applies to the other arguments. Rather, Castillo's brief only required the court to make a slight inferential step to put together his two references — denial of a fair trial in violation of the U.S. Constitution in the context of his videotape argument and violation of the Fourteenth Amendment in the conclusion.

[6]I concede that under *Hiivala*, reference to denial of a fair trial, on its own, would not have been sufficient for exhaustion. 195 F.3d at 1106.

9.   At slip op. 6926, footnote 8, lines 1-3; 370 F.3d at 893, footnote 8, lines 2-4: delete "Our case law requires citation to federal case law and reference to specific provisions of the federal Constitution" and replace with "Our case law requires citation to federal or state case law analyzing the federal constitutional issue or reference to specific provisions of the federal Constitution."

10.   At slip op. 6930, first full paragraph, line 1; 370 F.3d at 895, third full paragraph, line 1: delete "To me, this" and replace with "This."

With these amendments, Judges Rymer and Bybee have voted to deny the petition for panel rehearing and/or rehearing en banc, and Judge Hawkins has voted to grant the petition for panel rehearing and/or rehearing en banc.

The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc, and the matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 35.

With the filing of the amended opinion and amended dissent, no further petitions for panel rehearing or rehearing en banc may be filed. *See* 9th Cir. G.O. 5.3(a).

---

**OPINION**

BYBEE, Circuit Judge:

Petitioner Armando Castillo, an Arizona prisoner, appeals the District Court's dismissal of his amended petition for habeas corpus. 28 U.S.C. § 2254. Castillo's amended petition alleges the Arizona trial court denied Castillo "a fair trial in violation of the Fifth and Fourteenth Amendments" of the

U.S. Constitution by permitting the jury to view what he contends was a highly prejudicial videotape of his interrogation. We conclude that Castillo failed to exhaust his state court remedies and affirm the District Court's dismissal of his petition.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Arizona charged Castillo with second-degree murder and child abuse. The charges arose from a June 13, 1998, incident in which Castillo tended his girlfriend's two-year-old son. The child was sick with flu-like symptoms at the time and slept most of the day. While his girlfriend was gone, Castillo allegedly shook the two-year-old child, causing his death. Castillo adamantly insisted that he never harmed the child or shook him in any way. His theory, presented at trial, was that after his girlfriend returned and he left the apartment, she found her child sleeping and covered in vomit and mucus, panicked, and shook him in an attempt to wake him up, thereby causing his injuries.

In May 1999, Castillo was tried by jury in the State Court of Arizona for Maricopa County. The trial judge allowed the jury to view a videotape of the police interrogating Castillo that he argues was highly prejudicial. The videotape showed Castillo invoking his right to counsel and the interrogating detective making, according to Castillo, "numerous false and highly prejudicial misstatements of the evidence." On the videotape, which we have viewed, the detective asserted that the autopsy "scientifically proved" that only Castillo could have killed the two-year old, and repeatedly accused Castillo of lying and causing the child's death. Castillo repeatedly denied the detective's accusations.

Outside the jury's presence and before the videotape was shown, defense counsel argued that the court should exclude the videotape because the detective's statements were inaccu-

rate hearsay. The prosecution argued that it did not offer the detective's statements for their truth, but to show "interview technique." The trial judge said that he would hold a hearing to view the videotape and directed the attorneys not to mention it until after the hearing. He never held the promised hearing.

At trial, the prosecutor and defense counsel again argued whether the court should permit the videotape into evidence. Castillo objected on the grounds that the detective's statements were irrelevant. The court overruled Castillo's objection and allowed the videotape to be shown.

Prior to showing the videotape, the court orally instructed the jury: "You will be hearing some statements made by Detective Lewis on these tapes and the statements made are made to show their effect on the defendant, they are not made to show that they are necessarily true." After the prosecution showed the videotape and outside of the jury's presence, however, the trial judge frankly confessed his misgivings about the decision to admit the videotape and expressed concern about its potentially prejudicial effect. "In my 19 years on the trial bench, I have never ever admitted a tape like that in evidence. I'm really concerned about it." The court then opined that its decision would "never hold up if there is any appeal, never in a million years." To cure any potential prejudice, the court gave the jury a written instruction that

> [t]he audiotape interview viewed by you during this trial includes statements made to Mr. Castillo by a police officer. The audiotape was provided for you to hear Mr. Castillo's statements and his reaction to the police officer's statements. The information in the questions themselves are not evidence and should not be considered by you as evidence. The police officer's statements to Mr. Castillo are only to be considered by you to determine their effect upon the response made by Mr. Castillo.

The court also read a substantially identical version of this instruction to the jury before closing arguments.

Castillo was convicted on both counts of the indictment. He moved for a new trial, but the court denied the motion. Although the trial judge concluded that he should not have admitted portions of the videotape because they were irrelevant and prejudicial, he nonetheless concluded that the error as to these portions of the tape was harmless, and all the other material on the tape was properly admitted. The court sentenced Castillo to twenty-years imprisonment for the second-degree murder conviction and seven-years imprisonment for the child abuse conviction, to run concurrently.

Following sentencing, Castillo appealed to the Arizona Court of Appeals. The Court of Appeals affirmed Castillo's conviction and sentence by a memorandum decision explaining its rationale. Castillo then petitioned for discretionary review in the Arizona Supreme Court. The Arizona Supreme Court denied review without comment. Castillo did not pursue Arizona post-conviction relief.

On March 15, 2002, Castillo filed a petition and an amended petition for habeas corpus in the U.S. District Court for the District of Arizona.[1] Beyond challenging the trial court's impanelment of the jury as a violation of the Sixth and Fourteenth Amendments and claiming a violation of the Fourteenth Amendment under *Batson v. Kentucky*, 476 U.S. 79 (1986), Castillo's amended habeas petition alleges that the Arizona trial court denied Castillo "a fair trial in violation of the Fifth and Fourteenth Amendments" of the U.S. Constitution, by admitting the videotape of his interrogation and

---

[1]The Antiterrorism and Effective Death Penalty Act applies to Castillo's § 2254 amended petition because he filed his original petition after the Act's date of enactment, April 24, 1996. Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 107(c), 110 Stat. 1214, 1226 (1996).

arrest. Arizona answered the petition by arguing, *inter alia*, that Castillo had failed to exhaust his federal due process claim in the Arizona state courts and that his claim was now procedurally defaulted.

A magistrate judge issued a report and recommendation that agreed Castillo had not exhausted his claim. He concluded Castillo had not demonstrated cause and prejudice to excuse his default and recommended that the District Court dismiss the petition with prejudice. Alternately, he recommended that the District Court deny the claim on the merits because any error was harmless. Castillo objected, but the District Court adopted the report and recommendation and denied the petition. Nonetheless, the District Court granted Castillo a certificate of appealability with respect to "the introduction of the videotape." Castillo timely appealed.

## STANDARD OF REVIEW

We review de novo Castillo's failure to exhaust his Arizona remedies. *Vang v. Nevada*, 329 F.3d 1069, 1072 (9th Cir. 2003).

## DISCUSSION

**[1]** Arizona renews its argument that Castillo's failure to exhaust state remedies bars federal habeas review.[2] "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C.

---

[2]On appeal, Castillo fails to challenge the magistrate judge's conclusion, adopted by the District Court, that he had procedurally defaulted his unexhausted, federal, constitutional claim concerning the admission of the videotape. Thus, Castillo has waived any argument on appeal that he may return to Arizona state court to exhaust his unexhausted claim. Accordingly, we uniquely address Castillo's antecedent failure to exhaust and not the issue of any resulting procedural default.

§ 2254(b)(1)(A); *see also id.* § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.").

**[2]** To exhaust his Arizona remedies, Castillo had to give the Arizona courts a "fair opportunity" to act on his federal due process claim before presenting it to the federal courts. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999); *Peterson v. Lampert*, 319 F.3d 1153, 1155-56, 1159 (9th Cir. 2003) (en banc). We consider Castillo's briefing to the Arizona Court of Appeals to determine whether he fairly presented his federal due process claim to the Arizona courts.[3]

**[3]** Castillo's brief to the Arizona Court of Appeals needed to apprise Arizona that he was making a claim under the U.S. Constitution, *see Duncan v. Henry*, 513 U.S. 364, 365-66 (1995), and describe "both the operative facts and the federal legal theory on which his claim is based so that the state courts [could] have a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003) (citations and internal quotation marks omitted). Castillo must have "characterized the claims he raised in state proceedings *specifically* as federal claims." *Lyons v. Crawford*, 232 F.3d 666, 670 (2000) (emphasis in original), *as modified by* 247 F.3d 904 (9th Cir. 2001). Consistent with the recognition that state and federal courts are jointly responsible for interpreting

---

[3]In cases not carrying a life sentence or the death penalty, "claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them." *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999). We assume without deciding that we look to Castillo's Arizona Court of Appeals brief to determine whether Castillo afforded Arizona a fair opportunity to address his federal due process claim. Whether we also should consider his petition submitted to the Arizona Supreme Court is an open question we need not address, as the brief and the petition repeat the relevant language almost verbatim.

and safeguarding constitutional guarantees, we have held that citation to either a federal or state case involving the legal standard for a federal constitutional violation is sufficient to establish exhaustion. *See id.*; *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc) ("[F]or purposes of exhaustion, a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue."). In short, the petitioner must have either referenced specific provisions of the federal constitution or cited to federal or state cases involving the legal standard for a federal constitutional violation.

**[4]** Mere "general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial," do not establish exhaustion. *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) (citation omitted). Nor is it enough to raise a state claim that is analogous or closely similar to a federal claim. For example, in *Johnson v. Zenon*, 88 F.3d 828 (9th Cir. 1996), the petitioner argued in Oregon state court that the admission of prior act evidence " 'infringed on his right to present a defense and receive a fair trial,' " and therefore this evidentiary error was not harmless under Oregon law. *Id.* at 830-31. We held that the petitioner had not exhausted his Oregon remedies with respect to his federal claims: he had argued exclusively Oregon evidentiary law and never apprised the Oregon court that he was asserting a federal claim. *Id.* Similarly, in *Hiivala*, the petitioner failed to exhaust his Washington remedies when he argued to the Washington state court that the evidence was insufficient to support his conviction. 195 F.3d at 1106-07. Hiivala did not relate his claim to the Due Process Clause of the U.S. Constitution, cite the Fourteenth Amendment, or cite any federal or state cases involving the legal standard for a federal constitutional violation. *Id.*

**[5]** Moreover, citation of a relevant federal constitutional provision in relation to some other claim does not satisfy the exhaustion requirement. Recently, the Supreme Court, revers-

ing our court, concluded that a petitioner had failed to exhaust his available state remedies when he referenced the Sixth Amendment in relation to his claim that *trial counsel* was ineffective, but failed to reference it again in respect to his separate claim for ineffective assistance of *appellate counsel*. *See Baldwin v. Reese*, 124 S. Ct. 1347, 1351 (2004).

Here, Castillo claims that his various trial court motions and his opening brief in the Arizona Court of Appeals presented his federal due process claim to the Arizona Court of Appeals. We disagree.

**[6]** Castillo principally argues that his motion for a new trial, trial supplemental briefing, and trial motion to reconsider fairly presented his federal, constitutional due process claim to the Arizona Court of Appeals. The Supreme Court foreclosed that argument in *Baldwin*. The Arizona appeals court was not required to comb the trial court's decision to discover Castillo's federal constitutional issue. *Baldwin*, 124 S. Ct. at 1350 (declining to require state appellate judges to read lower state court opinions). *A fortiori*, the Arizona Court of Appeals was not required to review the parties' trial court pleadings to see if it could discover for itself a federal, constitutional issue. To exhaust his claim, Castillo must have presented his federal, constitutional issue before the Arizona Court of Appeals within the four corners of his appellate briefing. *Id.* at 1351. Therefore, we reject Castillo's assertion that his trial court pleadings fairly presented his federal due process claim to the Court of Appeals.

**[7]** Alternately, Castillo argues that his appellate briefing exhausted his Fourteenth Amendment due process claim concerning the admission of the videotape. At best, counsel's briefing merely hinted at the existence of any federal due process claim. In his brief's statement of the issues, Castillo articulated three separate questions. The headings to his arguments closely mirrored these questions, affirmatively answering

each question with only minor variation. Castillo presented the following questions to the Arizona Court of Appeals:

> I. Whether the trial court committed reversible [sic] in dismissing three jurors for cause who expressed concern about the court's requirement that they commit to following the court's instructions on the law without having first heard the instructions?
>
> II. Whether the trial court erred in finding racially neutral cause for the prosecutor's exercise of peremptory challenge to remove the only African-American from the jury?
>
> III. *Whether the trial court committed fundamental error by allowing the jury to view highly prejudicial videotapes of Appellant's interrogation and arrest and in failing to grant the subsequent motions for a new trial or the motion for reconsideration?*

(emphasis added). The only argument at issue in this appeal is question three. Castillo's statement of that issue and its corresponding argument heading were entirely silent as to any federal due process claim. Castillo neither mentioned in relation to that claim the source of his claimed right, *viz.*, the Fourteenth Amendment Due Process Clause, nor asserted any federal due process violation.

Similarly, the argument section of Castillo's briefing was all but devoid of any language presenting his federal due process argument to the Arizona Court of Appeals. On issue one, Castillo had argued that the trial court violated his Sixth Amendment right to a fair trial by an impartial jury, presumably incorporated against Arizona by the Fourteenth Amendment. On issue two, he claimed a *Batson* violation under the Fourteenth Amendment. In contrast, on issue three, Castillo focused his argument on whether the trial court should have excluded the videotape because it was prejudicial under Ari-

zona Rule of Evidence 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."). Nowhere in the argument concerning the videotape, until the penultimate sentence, did Castillo even refer to the U.S. Constitution. Finally, at the end of his argument, Castillo claimed that "[b]ecause this improper evidence was admitted, Appellant was denied a fair trial in violation of the United States and the Arizona Constitutions."

**[8]** That general appeal to a "fair trial" right, however, failed to exhaust Castillo's claim. *Hiivala*, 195 F.3d at 1106. It did not reference, as we require, any specific provision of the U.S. Constitution on which he rested his claim. *Lyons*, 232 F.3d at 670. Neither did Castillo cite relevant state or federal cases that might have alerted the Arizona court to his claim. *Baldwin*, 124 S. Ct. at 1351. Two of the three federal cases that he cited, *United States v. Hale*, 422 U.S. 171 (1975), and *Shepard v. United States*, 290 U.S. 96 (1933), discussed federal evidentiary rules, not due process principles. *See, e.g.*, *Hale*, 422 U.S. at 173 (declining to reach any federal constitutional question); *Shepard*, 290 U.S. at 104 (excluding evidence admitted under the "dying declaration" exception to the hearsay rule of evidence because of the risk of prejudice). The third case that Castillo cited, *Grunewald v. United States*, 353 U.S. 391 (1957), did not concern the Due Process Clause, but the Fifth Amendment privilege against self-incrimination. *Id.* at 415. Similarly, none of the state cases relied on by Castillo to support his third point of error involved the express invocation, explanation or discussion of due process standards. *E.g., State v. Hughes*, 189 Ariz. 62, 938 P.2d 457 (1997) (en banc) (criminal appeal construing the Arizona Rules of Evidence); *State v. Miller*, 186 Ariz. 314, 921 P.2d 1151 (1996) (criminal appeal discussing waiver and fundamental error under the Arizona Rules of Evidence); *State v. McVay*, 127 Ariz. 450, 622 P.2d 9 (1980) (criminal appeal construing the Arizona Rules of Evidence); *State v. Williams*, 111 Ariz. 511, 533

P.2d 1146 (1979) (criminal appeal reviewing admissibility of evidence); *Maxwell v. Aetna Life Ins. Co.,* 143 Ariz. 205, 693 P.2d 348 (App. 1984) (civil appeal applying doctrine of fundamental error); *Hinson v. Phoenix Pie Co.,* 3 Ariz. App. 523, 416 P.2d 202 (App. 1966) (civil appeal construing the Arizona Rules of Civil Procedure). Citation of irrelevant federal or state cases does not provide a state court with a " 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Kelly*, 315 F.3d at 1066.

*Sandgathe v. Maass*, 314 F.3d 371 (9th Cir. 2002), is not to the contrary. In that case, an Oregon post-conviction trial court expressly decided that Sandgathe was "not denied any right guaranteed . . . under the United States Constitution. . . ." *Id.* at 376-77. The Oregon Court of Appeals affirmed without any opinion. *Id.* at 375. Noting the Supreme Court's presumption that "where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground," *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991), we concluded that, "in light of the [post-conviction trial court's] prior decision," the Oregon Court of Appeals' summary affirmance also reached the merits of Sandgathe's federal claim. *Id.* at 378 & n.4. Thus, the *Ylst* presumption meant Sandgathe had adequately presented his federal claim to the Oregon Court of Appeals and thereby exhausted it, notwithstanding his otherwise confused appellate briefing and reliance on "inapposite federal citations." *Id.* at 378. *Sandgathe* so held because the "post-conviction trial court explicitly ruled on the federal constitutional issues and there is no indication that the Court of Appeals did not . . . ."[4] *Id.*

---

[4]Although we need not resolve the issue here, we question whether *Sandgathe*'s approach to exhaustion of state court remedies has survived the Supreme Court's recent decision in *Baldwin.* As previously noted, *Baldwin* disclaimed our circuit's approach to exhaustion that had effectively required a state appellate court to review a lower court's decision

Here, Castillo cannot claim the benefit of the *Ylst* presumption. Unlike in *Sandgathe*, the Arizona Court of Appeals addressed each of the issues Castillo briefed and argued and issued its own reasoned state judgment. It rejected on state law grounds Castillo's argument concerning the admission of his videotaped interrogation; it was silent as to any federal issue. Castillo had to alert the reviewing court to either the particular federal constitutional provisions or relevant federal cases upon which he relied. *Lyons*, 232 F.3d at 270. But he cannot raise Arizona evidentiary claims, cite cases dealing with the admission of evidence, mention the words "fair trial" and then reasonably expect the Arizona Court of Appeals to understand that he is complaining of anything other than evidentiary errors.

[9] The conclusion of Castillo's brief did no better in fairly presenting a federal due process claim to the Arizona Court of Appeals. The brief's parting sentence asserted that "[t]he gross violations of Appellant's Fifth, Sixth, and Fourteenth Amendment rights requires [sic] that his convictions and sentences be reversed and that he be granted a new trial consistent with due process of law." This conclusory, scattershot citation of federal constitutional provisions, divorced from any articulated federal legal theory, was the first time Castillo's brief used the words "due process" or "Fifth Amendment."[5]

---

for federal issues. 124 S. Ct. at 1351. *Baldwin* held that the availability of a lower court opinion addressing a federal issue — an issue not otherwise presented within the four corners of a petitioner's state appellate briefing — did not "fairly present" a federal claim to a state court such that the claim would be exhausted. *Id. Sandgathe*, however, looked to the lower court decision and presumed that the Oregon Court of Appeals had affirmed on the same federal grounds. 314 F.3d at 378. It did not limit the exhaustion inquiry to whether Sandgathe had presented his federal claim in the four corners of his state court appellate briefing.

[5]Castillo's citation of the Fifth Amendment was, of course, incorrect. The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States: "*nor shall any State* deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV (emphasis added).

Castillo, therefore, left the Arizona Court of Appeals to puzzle over how the Fifth, Sixth, and Fourteenth Amendments might relate to his three foregoing claims. Even if counsel-crafted briefing merited our liberal construction, the Arizona Court of Appeals would have had to infer that because the Sixth and Fourteenth Amendments likely related to Castillo's impartial jury claim and because the Fourteenth Amendment Equal Protection Clause likely related to his *Batson* claim, by implication, the Fifth Amendment (or, more accurately, the Fourteenth Amendment) would have had to relate to his denial of a fair trial as a result of the admission of the videotape. Such a process of elimination with a dose of charitable construction amounts to a good deal more than "a slight inferential step." Dissent at 2176 n.5. After all, Castillo's general reference to the Fourteenth Amendment in his conclusion might have referred to either his impartial jury or his *Batson* claims. Referring to the Fourteenth Amendment in relation to these other claims does not exhaust his separate assertion that the trial court violated his federal due process rights by admitting the videotape. *Baldwin*, 124 S. Ct. at 1351. Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory.

**[10]** Nor could Castillo exhaust his federal due process argument by asserting that the trial court committed "fundamental error" by admitting the videotaped interrogation. "Fundamental error," a matter of Arizona law, is "an appellate mechanism for considering and ruling on issues which were not presented to the trial court," *Villafuerte v. Lewis*, 75 F.3d 1330, 1335 (9th Cir. 1996), analogous to "plain error" review in federal court. The Arizona doctrine preserves for appeal issues that "may be so important that overriding considerations concerning the integrity of the system will excuse a party's failure to raise the issue in the trial court." *State v. Gendron*, 812 P.2d 626, 628 (Ariz. 1991). Although the Arizona Supreme Court has noted that fundamental error "usually, if not always, involves the loss of federal constitutional rights," *id.*, Castillo's mere assertion of fundamental error

does not mean he asserted a federal constitutional claim; claims subject to fundamental error review may consist entirely of assertions under Arizona law. *See Johnson v. Lewis*, 929 F.2d 460, 462 (9th Cir. 1991) (holding that when neither the petitioner's state court briefs nor the state court's decision made any reference to any federal constitutional claim or cited any federal constitutional cases, the lack of fundamental error found by the state court was a lack of fundamental error under Arizona's state constitution). Thus, an argument of "fundamental error" under Arizona law does not equate to raising a federal constitutional argument.

**[11]** Moreover, Castillo could not have expected an Arizona "fundamental error" claim to alert the Court of Appeals to the particular federal claim he now advances. Appellate counsel assert "fundamental error" when trial counsel failed to object properly at trial. *Villafuerte*, 75 F.3d at 1335. Here, Castillo repeatedly objected to the videotape's admission in the trial court on federal constitutional grounds. Accordingly, he preserved his right to appeal that issue; he had no need to argue that the videotape's admission was "fundamental error." If anything, the claim of "fundamental error" would have directed the Court of Appeals to consider an issue not raised or otherwise preserved below.

## CONCLUSION

Castillo did not fairly present his federal due process claim to the Arizona Court of Appeals. Thus, he failed to exhaust that claim. We may not correct counsel's failure to make this argument at the proper place and time by allowing him to argue now what should have been argued in hindsight. Accordingly, we do not reach the merits of Castillo's federal due process claim and affirm the District Court's dismissal of his petition.

AFFIRMED.

HAWKINS, Circuit Judge, dissenting:

A two-year old child tragically dies. The mother and her boyfriend, Armando Castillo ("Castillo"), are separately alone with the child when the fatal injuries occur. The medical evidence, sparse as it is, could be used to support a case against either. Law enforcement, convinced Castillo is responsible, conduct an in-custody interrogation of him which is captured on videotape. The lead detective, attempting to extract a confession,[1] repeatedly accuses Castillo of the crime and tells Castillo that he knows he is lying because the medical evidence is entirely inconsistent with Castillo's version of events. The tape also shows Castillo being patted down and asking for a lawyer. Throughout, the detective's pointed questions are laced with accusations that are simply not true:

> The bottom line is, is that he had a brain injury. . . . That could have only happened while he was with you. . . . The injury has been narrowed down [to occurring] during the time that you had him. . . . [The injury] was so acute that it had to happen within maybe a two hour period. . . . And you were the only one that was with him. . . . And that injury is consistent with either being shaken very hard or thrown down . . . or something to that effect that would of caused . . . his brain to bleed. . . . That's all scientifically proved at this point.

When the prosecution proposes the use of the entire videotape as evidence, Castillo's counsel objects. In the mistaken belief that he has reviewed the tape in advance, an experienced and thoughtful trial judge allows the tape, false accusations and all, to be played to the jury. When he realizes his mistake, the judge is obviously embarrassed and chagrined:

---

[1]Castillo does not confess, rather he repeatedly reasserts his innocence.

In my 19 years on the trial bench, I have never ever admitted a tape like that in evidence. I'm really concerned about it. I actually thought at first that counsel has agreed ahead of time, had exchanged transcripts, . . . that there really wasn't a big objection to admission of these tapes. . . . I was, therefore, shocked when I started to hear this tape and read some of the things on this, the transcripts. The man invoking his rights was shown to the jury, his arrest, his pat down. I mean I would never have admitted any of this. . . . I've never admitted a tape like this before. Never. Never. . . . I can't get over it. This will never hold up if there is any appeal, never in a million years.

The prosecutor relies on the tape's content in final argument and the jury convicts Castillo. In denying a motion for new trial, the trial judge again admits a serious mistake in admitting the videotape, but nonetheless denies relief on the reasoning that any error from its admission was harmless. The state appellate courts agree and affirm Castillo's 20-year sentence for child abuse and second degree murder on the basis that no fundamental error occurred at the trial.

My colleagues say we cannot reach the merits because counsel did not properly preserve the issue on appeal, failing to exhaust the federal due process claim in the Arizona state courts.[2] I cannot agree. The use of the videotape has been a central issue in this appeal from the beginning, and Castillo

---

[2]Technically, there is a difference between "failure to exhaust" and "procedural default." If a "defendant merely fails to exhaust, he may still be able to return to state court to present his claims there." *Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002). Procedural default connotes that the petitioner would not be able to return to state court. *Id.* Here, it is clear that Castillo would not be able to return to state court, his state court claims being procedurally barred. Therefore, "procedural default" is the correct term, even though it is at times used interchangeably with "failure to exhaust" in the majority opinion and in this dissent.

did reference the violation of his constitutional due process rights in his briefs to the state courts. However labeled, Castillo consistently complained of the use of the videotape in evidence and the correspondingly obvious prejudicial impact. And make no mistake about it, the tape is powerful evidence; so potent that all the curative instructions in the world could not erase its impact. I would, therefore, reach the merits and grant the petition.

## I.  Procedural Default

My colleagues determine that Castillo did not exhaust his state court remedies. Citing the Supreme Court's recent decision in *Baldwin v. Reese*, 124 S. Ct. 1347, 1350 (2004), they note that a state appeals court is not required to read the trial court decision to discover a constitutional issue *not pled in the brief*s. But where we disagree is precisely over Castillo's pleadings to the Arizona Court of Appeals, and *Baldwin* did not change those rules.

To preserve his federal constitutional claim, Castillo was required to specifically apprise the state court that he was making such a claim. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); 28 U.S.C. §2254(b)(1)(A). He was required to describe to the state court the operative facts concerning his claim and the federal legal theory on which his claim is based — that the admission of the videotape violated his due process right to a fair trial under the Fourteenth Amendment. *See Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir.), *cert. denied*, 538 U.S. 1042 (2003). Castillo had to give the state courts a "fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Id.* (internal quotation marks omitted). A general appeal to the broad principle of due process would not have been sufficient for exhaustion purposes, nor would it have been sufficient to only raise a state law claim that was similar to a federal claim. *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999); *see Duncan*, 513 U.S. at 366; *Johnson v. Zenon*, 88 F.3d 828, 829-31 (9th Cir.

1996). But we have more than a general appeal, here, and more than just a state law claim. Although the federal constitutional claim was not well developed, I would hold that it was certainly sufficient to alert the state of Arizona to Castillo's theory and to adequately raise the issue for exhaustion purposes.

There is no argument that Castillo did describe the facts surrounding the admission of the videotape in his brief to the state appellate court, even if he did so mostly in the context of his state law claims. The question is whether he sufficiently raised the federal constitutional argument.

In Castillo's state appellate court briefs,[3] he argued that he was denied a fair trial in violation of the United States Constitution. Also in that section, he cited three federal cases.[4] And in his conclusion, he argued that his Fourteenth Amendment right was violated and that he should be granted a new trial consistent with due process of law. Taken together, these three references should have been enough to alert the state court as to the nature and basis of Castillo's constitutional claims.

To raise the federal legal theory for purposes of exhaustion, *Lyons v. Crawford*, 232 F.3d 666, 669-70 (9th Cir. 2000), as modified by 247 F.3d 904 (9th Cir. 2001), a petitioner must simply characterize a claim as federal in nature, by either referencing specific provisions of the Constitution or citing to federal or state case law analyzing the federal constitutional issue. *See Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir.

---

[3]We may examine both Castillo's briefs to the Arizona Court of Appeals and the Arizona Supreme Court because, with the exception of life-sentence or capital cases, "claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them." *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999).

[4]None of the cases specifically applied to the federal due process claim.

2003) (en banc). Castillo did both, citing specific provisions of the Constitution and federal cases. He went further, referencing his Fourteenth Amendment right to due process in his conclusion.[5] Considering that he had also mentioned that he was denied a fair trial in violation of the Constitution in the context of his argument about the videotape,[6] he met his burden.

Second, this is even clearer because Castillo cited federal cases. In the context of determining whether the petitioner fairly exhausted his state court remedies, this court in *Sandgathe v. Maass*, 314 F.3d 371, 378 (9th Cir. 2002), noted that a petitioner's citation of federal constitutional cases "were not at all on point[.]" Still, the court said that "[c]onfused arguments or poor lawyering through inapposite federal citations is not the same as failing to raise an argument at all." *Id.*[7] Castillo referenced the federal Constitution and cited to federal cases in the context of his argument that admitting the unredacted videotape of his interrogation violated his right to a fair trial. We cannot ask for perfection — this should be enough.[8]

---

[5]The majority notes that "citation of a relevant federal constitutional provision in relation to some other claim does not satisfy the exhaustion requirement." But Castillo did not reference violation of his Fourteenth Amendment due process rights in relation to another specific claim, for instance, as a part of either of his other argument sections. Had he done so, of course the state court should not be charged with assuming that the reference applies to the other arguments. Rather, Castillo's brief only required the court to make a slight inferential step to put together his two references — denial of a fair trial in violation of the U.S. Constitution in the context of his videotape argument and violation of the Fourteenth Amendment in the conclusion.

[6]I concede that under *Hiivala*, reference to denial of a fair trial, on its own, would not have been sufficient for exhaustion. 195 F.3d at 1106.

[7]In *Sandgathe*, the panel ultimately held that the petitioner exhausted his claims because the state appellate court had addressed the federal issues, despite any arguable weaknesses in petitioner's presentation of the federal issues in his briefs to that court. 314 F.3d at 376-378.

[8]The majority says that Castillo engaged in "drive-by citation." Our case law requires citation to federal or state case law analyzing the federal

The majority relies on *Johnson* and *Hiivala*. 88 F.3d at 830-31; 195 F.3d at 1106. But, in *Johnson*, the petitioner made no specific reference to the Constitution or federal case law. 88 F.3d at 830-31. Similarly, in *Hiivala*, we held that the petitioner failed to exhaust his claims when he argued to the state court that the evidence was insufficient to support a state law conviction, but made no reference to the Due Process Clause, the Fourteenth Amendment, nor any federal or state cases involving the legal standard for a federal constitutional violation. 195 F.3d at 1106-07. Thus, *Hiivala* and *Johnson* are clearly distinguishable from this case, where Castillo did all three.

## II.  Habeas Standard

Because I conclude that Castillo did sufficiently raise the federal due process claim in the Arizona state courts, I turn to the application of the Antiterrorism and Effective Death Penalty Act ("AEDPA") standard, where the Arizona state courts did not rule upon Castillo's federal claim. Typically, when presented with an AEDPA-governed habeas petition on appeal, we would review the state court opinion de novo to determine whether that opinion was "contrary to or involved an unreasonable application of clearly established federal law." 28 U.S.C. § 2254(d); *Lewis v. Lewis*, 321 F.3d 824, 829 (9th Cir. 2003). Yet the reasoning of the Arizona courts was based entirely on state law — the state courts did not apply federal law at all.

To comply with federal precedent, however, a state court need not be aware of the precedent, let alone cite it. *Early v.*

---

constitutional issue or reference to specific provisions of the federal Constitution. Our case law does not require that the petitioner devote a paragraph or a page or an entire argument section to the federal legal issue. There simply must be a reference to federal law sufficient to put the state court on notice of the claim so that the court can address the issue. The state court, in what should have been careful review of the briefs, certainly had enough to address the federal claim.

*Packer*, 537 U.S. 3, 8 (2002). Instead, federal courts are to examine whether the standard actually applied, in this case state harmless error analysis, is contrary to clearly established Supreme Court precedent. *Id.* at 11. This court has applied *Early* in two situations — where the state court administers a reasoned opinion, even if it does not address federal law, and where the state court does not issue a reasoned opinion. *See Powell v. Galaza*, 328 F.3d 558, 562-63 (9th Cir. 2003); *Greene v. Lambert*, 288 F.3d 1081, 1089 (9th Cir. 2002). Clearly the former is applicable here. Although the state appellate court did not discuss federal precedent, it did issue a reasoned opinion on the state law question of fundamental error.[9] Thus, under *Powell*, we must independently examine the record and determine whether the *result* of the case, regardless of the state law reasoning, is contrary to federal precedent. 328 F.3d at 562-63.

## III.  Merits

On habeas review under AEDPA, the question is whether the state court's decision that admission of the videotape was harmless error was "contrary to" clearly established law. 28 U.S.C. § 2254(d).[10] The writ must be granted if the state court's decision "applies a rule that contradicts the governing

---

[9]Although fundamental error is an Arizona state law concept, the Arizona Supreme Court has noted that fundamental error "usually, if not always, involves the loss of federal constitutional rights." *State v. Gendron*, 812 P.2d 626, 628 (Ariz. 1991). Still, the mere assertion of fundamental error is not equivalent to an assertion of a federal constitutional claim.

[10]The statute also allows the federal reviewing court to ask whether the state court decision was an "unreasonable application of" Supreme Court precedent. 28 U.S.C. § 2254(d). This test is not applicable to Castillo's case, however, because a state court decision only involves an unreasonable application if the state court actually identified the correct governing legal principle, but then misapplied it. *See Williams v. Taylor*, 529 U.S. 362, 413 (2000). Here, the state court did not identify any federal principle at all.

law set forth in [Supreme Court] cases" or if it "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an opposite] result. . . ." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). In this case, the question is whether the state court decision based on harmless error was contrary to Supreme Court precedent.

Under *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), a violation of due process under the United States Constitution occurs when there was an error in admitting the evidence and that error had a substantial effect on the jury's verdict.

First, it seems clear that the videotape was admitted in error, or at the very least, parts of it were. The trial judge conceded as much and Arizona does not argue to the contrary, claiming instead that any error in admitting the videotape was harmless. Under the Arizona Rules of Evidence, the interview was irrelevant. ARIZ. R. EVID. 401-402; *see also* ARIZ. R. EVID. 403 (even if the interview was determined to be relevant, it likely should have been excluded under Rule 403, which provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."). At least parts of the interview were also hearsay not subject to any hearsay exceptions.[11] *See* ARIZ. R. EVID. 801-802.

Second, even if a Federal Rule of Evidence was violated, *Brecht* holds that to establish a due process violation, the petitioner must show that the improper admission of evidence had "a substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).[12] The Supreme

---

[11]The government asserts that the interview was admitted in evidence to show "interview technique."

[12]*O'Neal* makes clear that despite the burden of proof seemingly being put on the petitioner, the proper question is — "Do I, the judge, think that the error substantially influenced the jury's decision?" *O'Neal*, 513 U.S. at 436.

Court applied the *Brecht* standard in *O'Neal v. McAninch*, 513 U.S. 432 (1995). In that case, the Court held that where "the record is so evenly balanced that a conscientious judge is in grave doubt as to the harmlessness of an error[,]" the court must hold that the error substantially influenced the jury's decision. *Id.* at 437. The Court specifically adopted this rule and not the opposite rule, which would deny the writ in cases of grave uncertainty, because the latter rule "would tell judges who believe individuals are *quite possibly* being held 'in custody in violation of the Constitution' that they cannot grant relief." *Id.* at 442. Such a rule would be "contrary to the writ's most basic traditions and purposes." *Id.*[13]

This case presents just that situation. There were no witnesses to this crime, no medical evidence to dispute Castillo's defense that the child's mother shook the baby in her panic, and no evidence that the child's other, non-fatal injuries, were caused by Castillo, other than that Castillo often watched the child.[14] This was a case that turned entirely on credibility, and Castillo's credibility was clearly tarnished by his portrayal as a criminal in the improperly admitted videotape. Although the magistrate judge refers to "overwhelming evidence of [Castillo's] guilt," even without the videotape, it is unclear what that overwhelming evidence is.

Arizona argues that this circuit's opinion in *Dubria v. Smith*, 224 F.3d 995 (9th Cir. 2000) (en banc), is instructive. In that case, a woman was killed by chloroform intoxication. *Id.* at 999. The defendant had been in the company of the victim almost nonstop for days preceding her death. *Id.* He could not explain how the victim was exposed to chloroform. *Id.* at

---

[13]Although this decision came before the passage of AEDPA, AEDPA does not change these basic policy considerations.

[14]Castillo's testimony suggested that the child's biological father may have harmed the child when the child visited the father and also that some of the injuries may have been caused by rough play between the child and Castillo's older children.

1001. The trial judge allowed into evidence a videotape interview of the defendant by police detectives in which the detectives expressed disbelief in the defendant's story and elaborated on their theory of the crime. *Id.* at 1000.

Although *Dubria* was a pre-AEDPA case, it is instructive, albeit for different reasons than Arizona argues. There, we said that "[v]iewed in its entirety . . . the tape and transcript show what the state appellate courts quite properly described as an "unremarkable interview" . . . . There was nothing in [the detective's] statements that suggested evidence or theories of the case that were not presented at trial."[15] *Id.* at 1001. It was for that reason that the videotape admission in *Dubria* did not amount to a violation of due process.

This case is different. This was certainly anything but an unremarkable interview. The medical evidence presented at trial was extensive. Yet no expert set a time-frame on the child's death that was narrow enough to preclude Castillo's theory that the child's mother had caused his fatal injury. The detective, however, clearly represented in the videotape that the medical analysis did provide such concrete evidence. In the face of confusing medical testimony and a clear statement by law enforcement, it is quite likely that the clear statement had a substantial impact on the jury. In contrast to *Dubria*, precisely because the videotape *did* suggest evidence not pre-

---

[15]The California Court of Appeal had stated:

> There is no doubt the officers were accusatory and suggested in a variety of ways they did not believe appellant. The jury would certainly understand this to be the police position and would give to it no more weight than they would the fact appellant was charged by the prosecutor with murder or that the prosecutor clearly also disbelieved appellant. . . . The officers' comments, however, suggested no more than what the People proposed to prove at trial. There was nothing particularly damning in the officers' statements or suggestions of evidence or theories that the People did not present or offer at trial.

*Dubria*, 224 F.3d at 1001 n.2.

sented at trial, the improper admission in this case quite probably had a substantial and injurious effect or influence in determining the jury's verdict.

In further contrast to *Dubria*, any curative statement made by the judge was not sufficient to avoid the injurious effect on the verdict. Given the highly inflammatory content of the tape suggesting that the medical evidence was far more conclusive than it actually was, even with a curative instruction, the injurious effect on the jury's verdict could not have been mitigated. *See United States v. Gillespie,* 852 F.2d 475, 479 (9th Cir. 1988) (finding under the circumstances that "the trial court's curative instruction to the jury was not sufficient to obviate the prejudice"); *cf. Dubria*, 224 F.3d at 1002 ("This is not a case in which the statements at issue are so clearly prejudicial that a curative instruction could not mitigate their effect.").

Castillo has a viable claim that admission of the videotape violated his right to due process under the Fourteenth Amendment.[16] The state court's harmless error analysis was contrary to clear Supreme Court precedent in *O'Neal v. McAninch*, 513 U.S. 432 (1995). Specifically, the state court's analysis "contradicts the governing law" set forth in *Brecht* and applied in *O'Neal*, that in the face of important trial errors, including constitutional violations, a judge facing grave doubt about whether an error affected a jury must determine that the error had a "substantial and injurious effect" on the jury's verdict. 513 U.S. at 438.

## IV.   Conclusion

I would grant the writ and remand for a new trial. The evidence that was admitted was so prejudicial that despite the limiting instructions, the evidence still had a substantial and

---

[16]No state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AM. 14.

injurious effect or influence in determining the jury's verdict, particularly considering there was scant other evidence presented of Castillo's alleged guilt. Under AEDPA, the state court decision was therefore contrary to clearly established federal precedent. Therefore, I respectfully DISSENT.