Opinion by Judge N.R. SMITH; Partial Concurrence and Partial Dissent by Judge WARDLAW.
OPINION
N.R. SMITH, Circuit Judge:
Petitioner James Erin McKinney, an Arizona state prisoner, appeals the district court’s denial of his 28 U.S.C. § 2254 habe-as corpus petition. The Arizona state court sentenced McKinney to death on each of two counts of first-degree murder for the 1991 killings of Christene Mertens and Jim McClain. We affirm the district court.
In this opinion we address three claims raised in McKinney’s petition: (1) the trial court’s use of dual juries at trial; (2) the trial court’s use of a leg brace as a security measure during trial; and (3) whether the sentencing judge properly considered all mitigating evidence under Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982).[1] McKinney failed to exhaust each of these claims except one of his several dual juries claims and the Lockett/Eddings claim. McKinney’s unexhausted claims are proee-durally defaulted, because he would now be barred from raising them to the Arizona state courts. See Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir.2002) (citing Ariz. R.Crim. P. 32.2(a)). As to the remaining claims, the Arizona Supreme Court’s decision to deny relief was not contrary to, nor an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts before that court. See 28 U.S.C. § 2254(d).
FACTS AND PROCEDURAL HISTORY
A. Background[2]
On February 28, 1991, McKinney and his half brother, co-defendant Michael *908 Hedlund, committed the first in a string of five residential burglaries. Before this first burglary, McKinney and Hedlund (collectively, “Defendants”) were driving in Hedlund’s car with Chris Morris and Joe Lemon, discussing potential targets. Brandishing his gun, McKinney stated that he would shoot anyone that they found at home during the burglaries. Hedlund said that he would beat anyone that he encountered in the head.
At the time, Defendants had learned from Morris and Lemon that Christene Mertens supposedly kept thousands of dollars in an orange juice container in her refrigerator. Therefore, Defendants and Morris and Lemon intended to burglarize Mertens’s home on the first night of the burglary spree. However, Mertens came home and scared the would-be burglars away. As a result, the four of them chose a different house to burglarize, but obtained nothing of value from the burglary.
The next night, McKinney, Hedlund, and Morris committed two more burglaries. Lemon was not involved. McKinney and Morris stole a .22 revolver, twelve dollars, some wheat pennies, a tool apron, and a Rolex watch—splitting the “proceeds” with Hedlund after the crimes. When the homeowner returned home during the third burglary, McKinney and Morris ran away, leaving the homeowner unharmed. However, after the burglary, McKinney remarked that he and Morris “should have stayed and [McKinney] would have shot [the homeowner].”
On March 9, 1991, McKinney and Hed-lund returned to the Mertens home for the fourth burglary. When they entered the residence, Defendants found Mertens home alone and attacked her. After the attack Mertens had both gunshot and stab wounds. However, the medical examiner certified the cause of death as “a penetrating contact gunshot wound to the head.” Defendants ransacked the house and stole $120 in cash.
Defendants committed the fifth burglary and second murder at the home of Jim McClain on March 22, 1991. Defendants knew McClain, because Hedlund had bought a car from him about six months before the murder. McClain’s house was ransacked during the course of the burglary, and he was shot in the back of the head while sleeping. Defendants stole a pocket watch, three handguns, and McClain’s car. Defendants later tried to sell the stolen guns.
McKinney was tried on two counts of first degree murder, two counts of burglary, one count of theft, and one count of attempted theft. The trial court tried Defendants together, but empaneled separate juries to decide the guilt of each Defendant. The trial court required both Defendants to wear a leg brace as a security measure throughout the trial. McKinney’s jury found him guilty of all charges, except the attempted theft charge. The trial judge sentenced McKinney to death on each first degree murder conviction. State v. McKinney, 185 Ariz. 567, 917 P.2d 1214, 1218 (1996) (en banc), superseded by statute on other grounds as stated in State v. Martinez, 196 Ariz. 451, 999 P.2d 795, 806 (2000) (en banc).
B. Post-conviction proceedings
The Arizona Supreme Court upheld McKinney’s convictions and sentence on direct appeal. McKinney, 917 P.2d at 1234.
McKinney thereafter challenged his convictions and sentence in post-conviction *909 collateral proceedings. The Maricopa County superior court (the “State PCR Court”) concluded that none of the claims raised in McKinney’s operative petition for post-conviction relief (the “PCR Petition”) presented material issues of fact or law to warrant further proceedings. The State PCR Court summarily dismissed the petition. McKinney appealed the dismissal of the PCR Petition to the Arizona Supreme Court, which denied review on all claims relevant to this appeal.
Thereafter, McKinney raised 26 claims in his petition for writ of habeas corpus to the U.S. District Court for the District of Arizona. The district court denied relief on a number of these claims in 2006 and on the remaining claims in 2009. In its order denying relief, the district court granted a certificate of appealability (“COA”) on the issues of whether the trial court’s use of dual juries or a leg brace violated McKinney’s rights. The district court denied a COA on the remaining issues.
STANDARD OF REVIEW
“We review de novo the district court’s decision to grant or deny a petition for a writ of habeas corpus.” Rhoades v. Henry, 598 F.3d 495, 500 (9th Cir.2010).
The Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”) governs this case. See Lindh v. Murphy, 521 U.S. 320, 336-37, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); Lopez v. Schriro, 491 F.3d 1029, 1036-38 (9th Cir.2007). A petitioner must overcome a high threshold to obtain relief under AEDPA:
Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court’s decision was contrary to federal law then clearly established in the holdings of [the Supreme] Court, § 2254(d)(1); or that it involved an unreasonable application of such law, § 2254(d)(1); or that it was based on an unreasonable determination of the facts in light of the record before the state court, § 2254(d)(2).
Harrington v. Richter, — U.S.-, 131 S.Ct. 770, 785, 178 L.Ed.2d 624 (2011) (internal quotation marks and citation omitted).
The “only definitive source of clearly established federal law under AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision.” Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003), overruled on other grounds by Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). If Supreme Court “cases give no clear answer to the question presented, ... it cannot be said that the state court unreasonably applied clearly established Federal law.” Wright v. Van Patten, 552 U.S. 120, 126, 128 S.Ct. 743, 169 L.Ed.2d 583 (2008) (internal quotation marks omitted). In other words, “ ‘[i]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme Court].’ ” Richter, 131 S.Ct. at 786 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009)).
In cases where a petitioner identifies clearly established federal law and challenges the state court’s application of that law, our task under AEDPA is not to decide whether a state court decision applied the law correctly. See id. at 785. Rather, we must decide whether the state court decision applied the law reasonably. See id. (“ ‘[A]n unreasonable application of federal law is different from an incorrect application of federal law.’ ” (quoting Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000))). If the state court applied the law reasonably, we must deny relief. See id. Thus, we grant relief only “in cases where there is *910 no possibility fairminded jurists could disagree that the state court’s decision conflicts with [the Supreme Court’s] precedents.” Id. at 786.
DISCUSSION
I. Dual Juries Claims
McKinney raises a number of claims based on the trial court’s use of dual juries. However, McKinney exhausted [3] only one of them in the state courts, as AEDPA requires—his claim that the use of dual juries led to a prejudicial courtroom layout where McKinney sat facing the jurors throughout trial. McKinney’s “courtroom layout” claim fails, because he has failed to identify clearly established federal law that would provide the basis for relief under § 2254(d)(1). McKinney failed to exhaust any of the other potential dual juries claims and would now be barred from raising these claims in state court. See Beaty, 303 F.3d at 987 (citing Ariz. R.Crim. P. 32.2(a)). Accordingly, McKinney’s “other” dual juries claims are procedurally defaulted,[4] and he has not shown cause or prejudice to excuse the default. See id.
A. Background and procedural history
Before trial, Hedlund moved to sever his case from McKinney’s, and the State did not oppose the motion. The trial court initially granted the motion to sever. The trial court later asked the parties for briefing on the idea of using dual juries.
Thereafter, the trial court held a hearing on the use of dual juries. The State opposed the practice based on a perceived state procedural obstacle set forth in State v. Lambright, 138 Ariz. 63, 673 P.2d 1 (1983) (en banc), overruled by Hedlund v. Sheldon, 173 Ariz. 143, 840 P.2d 1008 (1992) (en banc). McKinney shared the State’s Lambright concern and argued that it would be improper for the court to employ an untested dual jury procedure. McKinney also argued that severance was required to avoid the introduction of impermissible, incriminating testimony under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).
The trial court concluded that the use of the dual juries would not impede Defendants’ right to fair trial, and found no inherent prejudice in the use of dual juries. At trial, both Defendants’ juries were present in the courtroom, except during “the reading of charges, opening statements, closing arguments, and testimony related to a particular defendant’s inculpa-tory statements.” Both before and during trial, the trial court reminded counsel to preserve the integrity of the dual jury procedure and to avoid eliciting testimony non-admissible against the other codefen-dant under Bruton.
Before trial, McKinney challenged the use of dual juries in a special action to the Arizona Court of Appeals. See Hedlund, 840 P.2d at 1009. The court of appeals *911 reversed, holding that the trial court exceeded its authority under the Arizona Rules of Criminal Procedure and the Arizona Supreme Court’s decision in Lam-bright Id. The Arizona Supreme Court reversed the court of appeals and affirmed the trial court’s decision to use dual juries. Id. at 1011.
On direct appeal of his conviction and sentence, McKinney claimed that the dual juries caused the courtroom layout “with Defendants facing the jurors, [to be] intimidating and resulted in fundamental error requiring reversal.” McKinney, 917 P.2d at 1232. The Arizona Supreme Court rejected this argument, concluding that McKinney could not demonstrate prejudice and provided no authority for “a constitutional right to a standard American courtroom arrangement.” Id.
McKinney raised the “courtroom layout” issue again in his PCR Petition. The State PCR Court rejected McKinney’s argument that the courtroom layout “tainted” the proceedings. McKinney also argued in the PCR Petition that the use of the dual juries violated his “right to a fundamentally fair trial” for a number of other reasons. However, McKinney did not invoke the U.S. Constitution, nor did he cite to any state or federal cases.
McKinney raised the same “courtroom layout” claim in his federal habeas petition. McKinney also made a number of other arguments that the use of the dual juries prejudiced his right to a fair trial. The federal district court addressed each sub-part of McKinney’s dual juries claim. Of those, the district court concluded that only McKinney’s “courtroom layout” claim was even “arguably exhausted in state court.” Despite this conclusion, however, the district court rejected all of McKinney’s arguments on the merits.
B. “Courtroom layout” claim
McKinney exhausted his “courtroom layout” claim. “To exhaust his Arizona remedies, [a petitioner must] give the Arizona courts a fair opportunity to act on his federal due process claim before presenting it to the federal courts.” Castillo v. McFadden, 399 F.3d 993, 998 (9th Cir. 2005) (internal quotation marks omitted). In so doing, a petitioner must apprise the state court that he is “making a claim under the U.S. Constitution, and describe both the operative facts and the federal legal theory on which [the] claim is based.... ” Id. at 999 (internal quotation marks and citation omitted). This can be accomplished by citing “specific provisions of the federal constitution or ... federal or state cases involving the legal standard for a federal constitutional violation.” Id. “Mere ‘general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial,’ do not establish exhaustion.” Id. (quoting Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.1999) (per curiam)); see also Fields v. Waddington, 401 F.3d 1018, 1021 (9th Cir.2005) (holding that a petitioner failed to exhaust a federal due process claim where petitioner’s briefing to the state court mentioned the federal constitution only twice and due process only once). In short, a petitioner must “alert the state courts to the fact that he [is] asserting a claim under the United States Constitution.” Hiivala, 195 F.3d at 1106.
McKinney set forth the “federal legal theory” underlying his prejudicial courtroom layout claim in his opening brief to the Arizona Supreme Court. McKinney claimed: “The bizarre and prejudicial seating arrangement deprived the appellant of due process under the Arizona and Federal Constitutions.” The briefs table of contents also cites the page containing that sentence under its entry for the “Fifth Amendment.” Taken together, the argu *912 ment and the table of contents allude to a specific provision of the U.S. Constitution. McKinney’s brief also invokes the U.S. Constitution numerous times in reference to other claims. Accordingly, McKinney’s brief was sufficient to alert the Arizona Supreme Court that McKinney raised a federal claim. See Robinson v. Schriro, 595 F.3d 1086, 1103 (9th Cir.2010) (“This is not a case where the petitioner failed to make clear that he was invoking a federal right, or where the petitioner’s general appeal to a constitutional guarantee was too vague to put the state court on notice of the federal claim.” (internal citations and quotation marks omitted)); Hiivala, 195 F.3d at 1106. Thus, we conclude that McKinney exhausted his “courtroom layout” claim.
Turning to the merits of McKinney’s “courtroom layout” claim, we must determine whether the Arizona Supreme Court’s decision rejecting this claim was contrary to, or an unreasonable application of, clearly established federal law. We conclude that it was not. McKinney cites no Supreme Court case, and our search reveals no case, that would provide the basis for relief under § 2254(d)(1). Accordingly, we echo the Arizona Supreme Court’s McKinney opinion, which held: “McKinney has not demonstrated any prejudice and provides no authority for his argument that there is a constitutional right to a standard American courtroom arrangement, and we decline to invent such a right.” 917 P.2d at 1232. McKinney is not entitled to relief on his prejudicial courtroom layout claim.
C. McKinney’s “other” dual juries claims
In addition to the “courtroom layout” claim, McKinney makes several arguments in federal court that the use of the dual juries denied him his right to a fair trial. McKinney claims the dual juries prejudiced him, because: (1) Defendants presented antagonistic defenses, which led to prejudicial leading questions, limited cross-examination, and Bruton violations; and (2) the procedure necessitated increased security and the use of a leg brace during trial. The State argues that McKinney procedurally defaulted these claims by failing to fairly present them to the state court. We agree.
1. McKinney failed to exhaust his “other” courtroom layout claims.
McKinney’s Arizona Supreme Court briefing did not set forth the operative facts or federal legal theory for any dual juries claim apart from the “courtroom layout” claim. The same is true of the PCR Petition. While the PCR Petition makes a general appeal to McKinney’s right to “due process” and a “fair trial,” this is insufficient to exhaust. See Castillo, 399 F.3d at 998; Hiivala, 195 F.3d at 1106. Accordingly, McKinney failed to exhaust any potential claim arising out of the trial court’s use of dual juries, except the “courtroom layout” claim.
McKinney argues that his claims were exhausted, because Hedlund raised the claims to the Arizona Supreme Court. However, “[t]he questions raised by [McKinney] involve constitutional privileges which are personal to him, and therefore an appeal by his co-defendant can not exhaust [his] remedies in the state courts.” Williams v. Nelson, 431 F.2d 932, 932-33 (9th Cir.1970) (per curiam).[5] Accordingly, McKinney failed to exhaust these claims because he failed to raise them personally to the state court.
*913 2. McKinney’s unexhausted dual juries claims are procedurally defaulted.
“A claim is procedurally defaulted ‘if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.’ ” Beaty, 303 F.3d at 987 (quoting Coleman v. Thompson, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). McKinney’s dual jury claims are procedurally defaulted, because he is barred “under Arizona law from going back to state court.” Id.; see also Ariz. R.Crim. P. 32.2(a), 32.4(a).[6]
“Nonetheless, we will review the merits if [McKinney] can show cause and prejudice or, alternatively, a fundamental miscarriage of justice.” Beaty, 303 F.3d at 987. While McKinney mentioned these exceptions in his briefing, he made no argument that they apply to excuse the procedural default of his dual juries claims. At oral argument, when asked whether he could show cause, McKinney argued that he could establish cause under Martinez v. Ryan, — U.S.-, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012). McKinney’s invocation of Martinez suggests that McKinney argues that the ineffective assistance of his PCR counsel constitutes cause to overcome the procedural default of his other dual juries claims. However, it is well-settled that ineffective assistance of PCR counsel does not establish cause. See Coleman, 501 U.S. at 753-57, 111 S.Ct. 2546. While Martinez created a “narrow exception” to this rule, 132 S.Ct. at 1315, the Martinez exception does not apply to McKinney's dual juries claims. The Supreme Court made clear that the exception applies only when the underlying constitutional claim is ineffective assistance of trial counsel. Id. Thus, McKinney cannot show cause and his dual juries claims are procedurally defaulted.
II. “Shackling” Claim
McKinney failed to exhaust his “shackling” claim. Because McKinney would now be barred from bringing the claim in state court, Beaty, 303 F.3d at 987, the claim is procedurally defaulted. McKinney has failed to show cause and prejudice to overcome the default.
A. Background and procedural history
The trial court required both McKinney and Hedlund to wear a leg brace during trial. The trial court rejected Defendants’ numerous objections to the use of the leg braces. The trial court reasoned that the Defendants’ close proximity to jurors and court staff, the violent nature of the crimes, and evidence of McKinney’s previous escape attempt and a subsequent escape plot warranted the extra security measures. The trial court later asked the State to make a specific record of the security concerns. Although McKinney’s motion for a new trial is silent on this issue, Hedlund raised the “shackling” issue at the post-trial phase. Similarly, McKinney did not raise the “shackling” issue to the Arizona Supreme Court on direct appeal. However, Hedlund did raise the claim, which was rejected. See McKinney, 917 P.2d at 1222-23. McKinney also failed to raise the issue in his PCR Petition.
The district court noted that McKinney did not raise the “shackling” issue on di *914 rect appeal or in his PCR Petition. The district court rejected McKinney’s argument that the Arizona Supreme Court decided the issue as part of its “fundamental error review.” However, rather than decide that the claim was proeedurally defaulted, the district court denied the claim as meritless.
B. McKinney’s “shackling” claim is proeedurally defaulted.
McKinney’s “shackling” claim is not exhausted, because he failed to raise it to the Arizona Supreme Court or in his PCR Petition. As with the dual jury claims, we reject McKinney’s argument that the claim was exhausted by virtue of Hedlund raising it on direct appeal. See Williams, 431 F.2d at 932-33. We also reject McKinney’s argument that this claim was exhausted due to the Arizona Supreme Court’s fundamental error review. “Where the parties did not mention an issue in their briefs and where the court did not mention it was considering that issue sua sponte, there is no evidence that the appellate court actually considered the issue, regardless of its duty to review for fundamental error, and the issue cannot be deemed exhausted.” Moormann v. Schri-ro, 426 F.3d 1044, 1057 (9th Cir.2005); see also Martinez-Villareal v. Lewis, 80 F.3d 1301, 1306 (9th Cir.1996) (“Under Arizona law, fundamental error review does not prevent subsequent procedural preclusion.”).
This unexhausted claim is now proeedurally barred, because McKinney would be barred from raising it to the state court. Beaty, 303 F.3d at 987; see also Ariz. R.Crim. P. 32.2(a), 32.4. Further, McKinney makes no argument for “cause” to excuse the default. Although McKinney makes numerous arguments of prejudice and injustice, he does not support these arguments with citations to any evidence in the record.[7] Thus, McKinney’s “shackling” claim is proeedurally barred.
III. Lockett!Eddings Claim.[8]
McKinney claims that the trial court did not adequately consider mitigating factors in imposing the death penalty, thereby violating McKinney’s rights under Lockett, Eddings, and their progeny. McKinney argues that the trial court failed to consider mitigation evidence,[9] finding that McKinney’s abusive childhood and its psy *915 chological effects did not affect McKinney’s “ability to perceive, comprehend or control his actions.” The State counters that the Arizona state courts fully considered all mitigating evidence and did not apply an unconstitutional nexus test. The State argues that the Lockett/Eddings line of cases holds only that a sentencer must fully consider proffered mitigation evidence and does not affect a sentencer’s determination of its weight. We agree. Because the record makes clear that the trial court adequately considered and weighed McKinney’s mitigation evidence, we deny relief.
A. Background and procedural history
McKinney had a traumatic childhood. At sentencing, the trial court heard evidence from McKinney’s aunt and half-sister of various abuses against McKinney by his father and step-mother. McKinney’s would-be care givers neglected him by forcing him to live in appalling conditions. McKinney did not have adequate clothing or food. McKinney was also frequently beaten and locked out of the house in extreme weather.
The trial court also heard evidence that these abuses led McKinney to develop Post-Traumatic Stress Disorder (“PTSD”). After administering a number of tests, McKinney’s expert, Dr. McMahon, testified that McKinney could be “emotionally overwhelmed by environmental stress and act in poorly-judged ways.” Dr. McMahon concluded that McKinney had “learning disabilities” but tested negative for “significant neuropsychological dysfunction.” Dr. McMahon testified that McKinney began abusing drugs and alcohol to distract him from his environmental stressors. Finally, Dr. McMahon opined that a sudden confrontation by Mertens during the course of the burglary could trigger a violent response from McKinney and that McKinney would have a “high likelihood” of diminished capacity in such an instance.
The trial court credited the testimony establishing McKinney’s “traumatic childhood.” The trial court also accepted, for the purpose of sentencing, Dr. McMahon’s PTSD diagnosis. Nevertheless, the trial concluded:
[AJfter considering all of the mitigating circumstances, the mitigating evidence that was presented by the defense in this ease as against the aggravating circumstances, and other matters which clearly are not set forth in the statute which should be considered by a court, I have determined that given ... the aggravating circumstances which have been proven beyond a reasonable doubt by the State with respect to each of these homicides in Counts I and III have concluded that the mitigating circumstances simply are not sufficiently substantial to call for a leniency under all the facts of this case.
The Arizona Supreme Court rejected McKinney’s argument that the trial court did not adequately take into account McKinney’s abusive childhood and its effects. McKinney, 917 P.2d at 1234. The court reasoned that “the judge gave full consideration to McKinney’s childhood and the expert testimony regarding the effects of that childhood.... ” Id. The court explained that evidence of a traumatic childhood “does not necessarily have substantial mitigating weight absent a showing that it significantly affected or impacted the defendant’s ability to perceive, comprehend, or control his actions.” Id. (emphasis added).
The federal district court concluded that the Arizona Supreme Court’s decision to uphold the sentence was not contrary to, nor an unreasonable application of, Lock-ett/Eddings.
*916 B. McKinney has failed to show that the Arizona Supreme Court unreasonably applied Lockett/Eddings.
In Lockett, the Supreme Court held:
[T]he Eighth and Fourteenth Amendments require that the sentencer ... not be precluded from considering, as a mitigating factor, any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death....
Given that the imposition of death by public authority is ... profoundly different from all other penalties, ... [the sentencer must be free to give] independent mitigating weight to aspects of the defendant’s character and record and to circumstances of the offense proffered in mitigation....
438 U.S. at 604-05, 98 S.Ct. 2954 (finding Ohio death penalty statute invalid where it permitted consideration of only three mitigating circumstances).
Later, in Eddings, the Supreme Court applied Lockett in a case where the trial judge found he could not consider in mitigation evidence of the defendant’s family history.[10] 455 U.S. at 112-13, 102 S.Ct. 869. The appeals court affirmed the trial court, finding that the mitigation evidence was “not relevant because it did not tend to provide a legal excuse” for responsibility for the crime. Id. at 113, 102 S.Ct. 869. The Supreme Court reversed, explaining that “[j]ust as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, as a matter of law, any relevant mitigating evidence.... The sentencer ... may determine the weight to be given relevant mitigating evidence. But they may not give it no weight by excluding such evidence from their consideration.” Id. at 113-15, 102 S.Ct. 869.
In Tennard v. Dretke, the Supreme Court rejected a “nexus test” that would find mitigating evidence relevant only where it bears a causal nexus to the crime. 542 U.S. 274, 287, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004) (“[W]e cannot countenance the suggestion that low IQ evidence is not relevant mitigating evidence ... unless the defendant also establishes a nexus to the crime.”). Citing Lockett and Eddings, the Court cautioned that the jury must be given an effective vehicle with which to weigh mitigating evidence so long as the defendant has met a “low threshold for relevance,” which is satisfied by “evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value.” Id. at 284-85,124 S.Ct. 2562.
In Smith v. Texas, the Court again considered the use of a nexus test to determine whether mitigating evidence is relevant. 543 U.S. 37, 45, 125 S.Ct. 400, 160 L.Ed.2d 303 (2004). The Court “unequivocally rejected” any test requiring a causal nexus between mitigating evidence and the crime. Id.
We have held that Tennard and Smith are retroactively applicable to decisions such as the Arizona Supreme Court’s 1996 decision in this case. See Schad v. Ryan, 671 F.3d 708, 723 (9th Cir.2011) (per curiam), cert. denied, — U.S. -, 133 S.Ct. 432, 184 L.Ed.2d 264 (2012). Thus, *917 under clearly established federal law, we review (1) whether the trial court considered all relevant mitigating evidence, as required by Lockett and Eddings; and, (2) whether the Arizona Supreme Court applied an unconstitutional causal nexus test to exclude evidence proffered in mitigation, contrary to Tennard and Smith.
In this case, the Arizona courts did not improperly exclude any of McKinney’s mitigating evidence. Further, the Arizona courts did not employ an unconstitutional nexus test. Thus, the Arizona Supreme Court’s decision to affirm McKinney’s sentence was not contrary to, nor an unreasonable application of, clearly established federal law.
1. All mitigating evidence was considered as required by Eddings.
The Arizona Supreme Court did not violate Eddings when it concluded that the trial court considered all the mitigation evidence before it. The Arizona Supreme Court clearly understood and applied the controlling Supreme Court precedent. See McKinney, 917 P.2d at 1227. It concluded: “[T]he judge considered McKinney’s abusive childhood and its impact on his behavior and ability to conform his conduct and found it insufficiently mitigating to call for leniency.” Id. at 1234 (emphasis added). The Arizona Supreme Court did not say that the evidence was irrelevant or could not be considered.[11] Id.
We reject McKinney’s and the dissent’s implication that the Arizona Supreme Court’s decision merely paid lip service to Eddings, and the trial judge did not actually consider the evidence. As an initial matter, the trial court’s certification that it considered all the mitigation evidence is entitled to some weight. See Lopez, 491 F.3d at 1037 (“ We must assume that the trial judge considered all this evidence before passing sentence. For one thing, he said he did.’ ” (quoting Parker v. Dugger, 498 U.S. 308, 314, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991))). In addition, the record shows that the trial court’s commitment to Eddings was more than semantic—the trial judge genuinely weighed the mitigation evidence’s persuasive value. The trial judge expressly credited the evidence of childhood abuse, describing it as “beyond the comprehension and understanding of most people who have not grown up under those circumstances.” The trial court also accepted, for the purpose of sentencing, Dr. McMahon’s PTSD diagnosis. Further, even when the court discussed the possible link between McKinney’s PTSD and the crimes, the record shows that it considered all the evidence and weighed the evidence’s probative value. The trial judge stated:
I found it interesting Dr. McMahon also indicated that one of the techniques—or the manifestations of Post-traumatic Stress Syndrome that might be expected were that the individual be depressed, would be withdrawn. It appears to me that defense attempted to demonstrate that in their presentation of mitigating circumstances and that such an individual would expect to avoid contacts which would either exacerbate or recreate the trauma that would bring on this type of stress from childhood. And yet, rather than continue to avoid any of these circumstances after the Mertens homicide, it appears that the same thoughtful, reflective planning went into, then, the *918 burglary of a known target to both the defendant and the co-defendant, Mr. McClain.
Other portions of the sentencing transcript similarly demonstrate the judge’s deliberative process as he considered the PTSD evidence and weighed it against the other evidence presented. This careful analysis of Dr. McMahon’s testimony contradicts McKinney’s and the dissent’s claim that the sentencing judge excluded the evidence, or refused to consider it, as a matter of law.[12]
The dissent selectively quotes passages from the sentencing transcript to argue that the Arizona state courts did not properly consider evidence of PTSD. There are two problems with the dissent’s approach. First, it reads too much into certain passages, notably the sentencing judge’s discussion of the psychological study submitted as Exhibit 3. Contrary to the dissent’s view, nothing in the sentencing judge’s discussion of PTSD shows that he believed it was “irrelevant” as a matter of law. At most, the discussion of PTSD shows that the sentencing judge was equivocal about what effect in mitigation the PTSD diagnosis should have. This strengthens the conclusion that the sentencing judge considered the evidence and did not simply exclude it. However, even if the sentencing judge created some ambiguity in the record by “thinking out loud” as he considered the PTSD evidence, that ambiguity should be cast in favor of the state. See Poyson v. Ryan, 711 F.3d 1087, 1099 (9th Cir.2013).
Similarly, the dissent overlooks passages where the sentencing judge clearly stated that he considered “all of the mitigating circumstances.” Contrary to the dissent’s view, we do not fail to take into account the difference between the sentencing judge’s treatment of the PTSD and other mitigation evidence. There is no difference in treatment. The record clearly shows the sentencing judge’s deliberation as he considered each piece of mitigation evidence. Thus, the record as a whole contradicts the dissent’s view that the Arizona state courts rejected the PTSD evidence as a matter of law.
Because the record shows that the sentencing judge considered all the potential mitigation evidence, we reject McKinney’s and the dissent’s reliance on a number of our past cases granting relief. See, e.g., Williams v. Ryan, 623 F.3d 1258 (9th Cir. 2010); Styers v. Schriro, 547 F.3d 1026, 1035-36 (9th Cir.2008); Lambright v. Schriro, 490 F.3d 1103, 1115 (9th Cir.2007). Those cases provide little guidance to inform our AEDPA review. For example, in Williams, we granted relief under Lockett/Eddings. However, unlike the state courts here, the state courts in Williams held that the mitigating evidence “could not be considered as a mitigating factor of any kind.” 623 F.3d. at 1270 (internal quotation marks omitted). This statement resembles the clear statement from Ed- *919 dings that the trial judge excluded mitigation evidence as a matter of law. See Eddings, 455 U.S. at 109, 102 S.Ct. 869. Styers and Lambright, also cited by McKinney and the dissent, contain similar statements. See Styers, 547 F.3d at 1035-36 (granting relief under Eddings where Arizona Supreme Court analysis made clear that mitigating evidence was not considered); Lambright, 490 F.3d at 1115 (granting relief under Lockett where the trial court did not consider “any evidence without an explicit nexus to the crime, or ... gave such evidence de minim[i]s weight”).
The record in this case does not contain the same clear statement of exclusion that appears in those cases, rendering them inapposite. See Schad, 671 F.3d at 724 (distinguishing Styers and Lambright, because “[i]n both of those cases ... it was clear from the record that the lower court had applied the unconstitutional nexus test and had excluded mitigation evidence” (emphasis added)). We will not second-guess the Arizona state courts’ application of Eddings where the record shows that the courts considered and weighed all mitigation evidence[13] and did not make a clear, affirmative statement of exclusion. See id. (“Absent a clear indication in the record that the state court applied the wrong standard, we cannot assume the courts violated Eddings’s constitutional mandates.”); see also Lopez, 491 F.3d at 1036-38 (denying relief under Eddings where “the sentencing court did not prevent [the petitioner] from presenting any evidence in mitigation, nor did it affirmatively indicate that there was any evidence it would not consider”).
2. The Arizona Supreme Court did not apply an unconstitutional nexus test to McKinney’s mitigating evidence.
As we have previously recognized, state courts are free to consider a nexus to determine the weight to give mitigation evidence. See Schad, 671 F.3d at 723 (“The United States Supreme Court has said that the use of the nexus test in this manner is not unconstitutional because state courts are free to assess the weight to be given to particular mitigating evidence.”). For example, we upheld the Arizona Supreme Court’s exercise of this discretion in Towery v. Ryan, 673 F.3d 933, 944-45 (9th Cir.2012), cert. denied, — U.S.-, 132 S.Ct. 1738, 182 L.Ed.2d 271 (2012). In Towery, we reviewed the Arizona Supreme Court’s rulings that (1) the sentencing court “must consider the defendant’s upbringing if proffered but is not required to give it significant mitigating weight” and (2) the question of “[h]ow much weight should be given proffered mitigating factors is a matter within the sound discretion of the sentencing judge.” Id. at 938. We concluded that these were *920 “correct statements of the law.” Id. at 944. We also affirmed the ruling that “a difficult family background is not always entitled to great weight as a mitigating circumstance,” and “where the defendant fails to connect his family background to his criminal conduct, a trial judge could give it little or no weight or value.” Id. at 944-45.
Here, like in Towery, the Arizona Supreme Court concluded that “a difficult family background, including childhood abuse, does not necessarily have substantial mitigating weight absent a showing that it significantly affected or impacted the defendant’s ability to perceive, comprehend, or control his actions.” McKinney, 917 P.2d at 1234. While the Arizona Supreme Court ultimately decided that the cumulative weight of the mitigating evidence did not call for leniency, the court based this conclusion on the weight assigned to mitigating factors. Nothing in the record suggests that the Arizona Supreme Court outrightly rejected, or otherwise did not fully consider, those factors due to a lack of nexus to the crime. Accordingly, the Arizona Supreme Court did not apply an unconstitutional nexus test when it affirmed the sentencing court’s exercise of discretion over the weight to assign the evidence that it considered.
We reject the dissent’s argument that other Arizona Supreme Court cases applying an unconstitutional nexus test demonstrate that the Arizona Supreme Court “followed suit” in this case. We have formerly rejected the argument that “the Arizona Supreme Court’s historical use of an unconstitutional causal nexus test” creates a presumption of error. See Poyson, 711 F.3d at 1099. Any such presumption would be especially inappropriate here, because the Arizona Supreme Court’s decision makes clear that it did not apply an unconstitutional nexus test.[14]
McKinney makes much of the Arizona Supreme Court’s citation to State v. Ross, 180 Ariz. 598, 886 P.2d 1354 (1994). In Ross, the Arizona Supreme Court stated “[a] difficult family background is not a relevant mitigating circumstance unless ‘a defendant can show that something in that background had an effect or impact on his behavior that was beyond the defendant’s control.’ ” Id. at 1363 (emphasis added) (quoting State v. Wallace, 160 Ariz. 424, 773 P.2d 983, 986 (1989)). McKinney argues that the Arizona Supreme Court’s citation to Ross demonstrates that it held the mitigation evidence irrelevant and unconstitutionally excluded it for its lack of causal nexus to the crime.
We reject this argument, just as we rejected a similar argument in Towery, where the Arizona Supreme Court supported its decision with a citation to Wallace. See Towery, 673 F.3d at 946. While the Towery court deemed Wallace (and, by extension, Ross) “constitutionally suspect,” this does not end the analysis. See id. We must review the record in McKinney’s case to determine whether the sentencing court and the Arizona Supreme Court actually applied the unconstitutional test. See id. For the reasons stated above, we conclude that the Arizona Supreme Court did not apply an unconstitutional nexus test, notwithstanding the citation to Ross.[15] Thus, McKinney has failed *921 to establish that the Arizona Supreme Court’s decision to uphold the trial court was contrary to, or an unreasonable application of, Lockett/Eddings.
CONCLUSION
The district court properly denied relief on McKinney’s “courtroom layout” and Lockett/Eddings claims, because the Arizona Supreme Court’s decision denying relief was not contrary to, nor an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts. The district court also properly denied relief on McKinney’s remaining dual juries and “shackling” claims, because the claims are procedurally defaulted.
AFFIRMED.[16]

. McKinney raises other uncertified claims on appeal. Because McKinney has not shown that the district court's resolution of the other claims is "debatable amongst jurists of reason,” Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003), we decline to expand the certificate of appealability to review the claims. See 28 U.S.C. § 2253(c); Hiivala v. Wood, 195 F.3d 1098, 1102-04 (9th Cir. 1999) (per curiam).

. These facts are drawn substantially from the Arizona Supreme Court's opinion in State v. McKinney, 185 Ariz. 567, 917 P.2d 1214, 1218-19 (1996) (en banc), superseded by statute on other grounds as stated in State v. *908 Martinez, 196 Ariz. 451, 999 P.2d 795, 806 (2000) (en banc). We presume the correctness of the Arizona court’s findings unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

. The exhaustion doctrine requires a petitioner to provide the state courts with the opportunity to rule on his federal constitutional claims before presenting these claims to a federal habeas court. See King v. Ryan, 564 F.3d 1133, 1138 (9th Cir.2009); 28 U.S.C. § 2254(b)(1) (proving that a writ of habeas corpus shall not be granted unless “the applicant has exhausted the remedies available in the courts of the State”).

. A state prisoner procedurally defaults federal claims if he fails to raise them as federal claims in state court or if, in raising the claims, he fails to comply with applicable state procedural rules. Coleman v. Thompson, 501 U.S. 722, 730-31, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The state can successfully assert a procedural default defense to federal habeas review unless the prisoner can show both "cause” for the procedural default and actual prejudice, or the prisoner demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice. Id. at 750, 111 S.Ct. 2546.

. Contrary to McKinney's argument, the subsequent case, Harris v. Superior Court of the St. of Cal., Los Angeles Cnty., 500 F.2d 1124, 1126 (9th Cir.1974) (en banc), did not affect this portion of Williams.

. Arizona Rules of Criminal Procedure 32.2(a) and 32.4(a) provide alternate bases for our conclusion that McKinney’s claims would now be barred. Rule 32.2(a)(3) precludes "any claim that could have been brought on direct appeal or in a prior PCR petition.” Henry v. Ryan, 720 F.3d 1073, 1081 (9th Cir.2013). Rule 32.4 bars untimely claims. See, e.g., Beaty, 303 F.3d at 987.

. The only evidence offered to the state court on prejudice were statements from members of Hedlund’s jury. Even if this evidence were probative of the McKinney jury's prejudice, it actually cuts against a prejudice finding. While jurors clearly saw the leg brace, the only jurors interviewed stated that the leg brace had no bearing on their verdict. While not “dispositive” of the prejudice issue, see Holbrook v. Flynn, 475 U.S. 560, 570, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986), the jurors’ statements arguably have some weight. Unlike the juror statements that were given "little stock” in Holbrook, the jurors gave their impressions of the leg brace in this case after the trial was over, not during voir dire. See id.

. The district court declined to grant a COA on this issue. However, because McKinney exhausted this claim and because we conclude that the district court's resolution of the issue is "debatable amongst jurists of reason,” Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003), we address it.

.In addition to evidence of childhood abuse and psychology, McKinney argues that the trial court failed to consider McKinney’s level of participation in the murders. He develops this argument, without citation, in a single sentence: "The trial judge noted there is no proof McKinney killed Ms. Mertens at the Hedlund sentencing but not at Mr. McKinney's sentencing.” Even assuming this properly characterizes the record, the record elsewhere reveals that the judge specifically considered McKinney's level of participation in the crimes at sentencing. The trial court specifically found "substantial participation in the McClain homicide by Mr. McKinney.”

. In Eddings, the sentencing judge made clear, on the record, that he could not consider certain evidence as a matter of law. He stated: "[T]he Court cannot be persuaded entirely by the ... fact that the youth was sixteen years old when this heinous crime was committed. Nor can the Court in following the law, in my opinion, consider the fact of this young man's violent background." 455 U.S. at 109, 102 S.Ct. 869 (alterations in original).

. Other cases pre-dating or contemporaneous with McKinney also demonstrate that the Arizona Supreme Court was well-aware of the Lockett/Eddings line of cases and the requirement that the sentencing court fully consider all mitigating evidence. See, e.g., State v. Towery, 186 Ariz. 168, 920 P.2d 290, 310-11 (1996) (en banc); State v. Gonzales, 181 Ariz. 502, 892 P.2d 838, 851 (1995) (en banc).

. This obvious deliberation is in sharp contrast to the sentencing court record in Towery. In that case, we upheld the Arizona Supreme Court’s decision to deny relief under Eddings despite some language in the sentencing transcript indicating that mitigating evidence was excluded, or not considered. See 673 F.3d at 936-37, 946-47. For example, the sentencing judge stated: "[A] difficult family background in and of itself, is not a mitigating circumstance.” Id. at 936. The sentencing court went on to explain that "[a] difficult family background is a relevant mitigating circumstance, if a defendant can show that something in that background had an [e]ffect or impact on his behavior that was beyond the defendant’s control.” Id. (emphasis added) (second alteration in original). Here, the record makes clear that both the sentencing court and the Arizona Supreme Court fully considered all mitigating evidence. Thus, the proper resolution of the Eddings issue in this case is even clearer than it was in Towery.

. The dissent argues that the Arizona Supreme Court’s conclusion that the sentencing judge “gave full consideration to” McKinney's PTSD evidence, see McKinney, 917 P.2d at 1234, was based on an unreasonable determination of fact under § 2254(d)(2). The dissent also argues that the sentencing judge never accepted Dr. McMahon's PTSD diagnosis, nor made a finding of PTSD, which tainted the Arizona Supreme Court’s review.
As demonstrated above, the record contradicts both arguments. As the dissent acknowledges, "the sentencing judge did quite a bit of talking about PTSD.... ” This discussion demonstrates the sentencing judge’s deliberative process—his weighing of the evidence. There would have been little need to do so much "talking” about the PTSD diagnosis if he planned to exclude it as a matter of law. Further, the record demonstrates that the sentencing judge assumed that the PTSD diagnosis was true. Nothing required the sentencing judge to make a particular finding that the diagnosis was accurate, because the record shows that he was able to adequately weigh the evidence by assuming that it was true.

. We also reject the dissent’s view that the sentencing court (as distinct from the Arizona Supreme Court) impermissibly applied a causal nexus test. As discussed above, the record makes clear that the sentencing court did not exclude any evidence due to a lack of causal nexus to the crime, or for any other reason.

. At least one Arizona Supreme Court case decided after McKinney recognizes that McKinney discussed "weighing” the mitigating evidence, notwithstanding McKinney's citation to Ross. See State v. Greene, 192 Ariz. 431, 967 P.2d 106, 118 (1998) (en banc).

. On December 3, 2012, McKinney filed a "Motion to File Late Supplemental Authorities.” While we see no reason that these authorities could not have been presented in a 28(j) letter, we nevertheless "grant” the motion. However, none of the authorities referenced provide any basis for relief under AED-PA.